662 P.2d 1349

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Reilly Burk JOHNSON,
Defendant-Appellant.**

**No. 14272.**

Supreme Court of New Mexico.

April 28, 1983.

Mary Ann Ortega, Albuquerque, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

RIORDAN, Justice.

Reilly Burk Johnson (Johnson) was convicted of the first degree murder of his wife, Sylvia, in violation of Section 30–2–1(A), N.M.S.A.1978 (Cum.Supp.1982), for which he was sentenced to life imprisonment. Johnson appeals. We affirm.

The issues on appeal are:

I.   Whether Johnson's first degree murder conviction is supported by substantial evidence.

II.   Whether the trial court erred in denying Johnson's motion for a directed verdict.

III.   Whether the trial court erred in not granting Johnson's motion to dismiss following the State's failure to produce evidence.

IV.   Whether the trial court erred in admitting testimony pursuant to the state of mind exception to the hearsay rule, N.M.R. Evid. 803, N.M.S.A.1978 (Cum.Supp.1982).

V.   Whether the trial court erred in taking judicial notice of the New Mexico statute that disposes of separate property in intestate succession, Section 45–2–102, N.M.S.A.1978.

VI.   Whether the trial court erred in allowing expert testimony as to the time of Sylvia's death.

VII.   Whether the trial court abused its discretion in allowing rebuttal testimony.

VIII.   Whether submitting two first degree verdict forms to the jury violates Johnson's due process rights.

IX.   Whether Johnson's due process rights were violated by using cassette tape recordings instead of a typewritten transcript for preserving the trial court record.

FACTS

On April 23, 1981, Johnson and Sylvia had an argument as a result of a telephone call to Sylvia in which she was told that Johnson was seeing another woman in Dallas, Texas.   Johnson was unemployed at this time but had been working occasionally in Dallas.   Sylvia left after the argument to deliver a check to one of her clients and returned to the residence later that evening.   Johnson, who had been drinking that day, continued to drink and watch television during the evening, and later went to bed drunk.

On April 24, 1981, emergency rescue personnel, responding to a telephone call made by Johnson, found Sylvia dead.   Her body was found in bed, in flannel pajamas, under

bedcovers. An autopsy revealed that her body contained an abnormally high amount of ether. The autopsy also revealed a bruise on the back of the head, a bruise on the forehead, and bruises to the neck and around the jawline area, as well as scratches on the nose and the backs of her hands.

## I. *Substantial Evidence*

At trial, Johnson claimed that at the time he joined Sylvia in bed, she "was fine" but asleep, and that he fell asleep and did not awaken until morning. When he awoke, Johnson claimed that he discovered that Sylvia was dead. Johnson further claimed that Sylvia died from an acute asthma attack.

The State presented evidence that bruises around the line of Sylvia's jaw were consistent with bruises that would be caused by the fingertips of a person holding an ether mask over her face, that these bruises were made contemporaneously with her death, the time of which was estimated to be about two hours before the emergency medical rescue arrived at the residence, and that the cause of Sylvia's death was strangulation. Furthermore, medical testimony indicated that the scratches on Sylvia's nose were made contemporaneously with her death, and were consistent with scratches which a person resisting the administration of ether would self-inflict. There was evidence that it was common for persons being administered ether to resist because of its unpleasantness. In addition, the State presented evidence that Johnson was in considerable debt, had little income, and stood to gain financially from Sylvia's death. There was also evidence that Johnson was trained and certified as an emergency medical technician, and had extensive knowledge and interest in drugs. He was a former honors student in physiology, math and chemistry. On appeal, Johnson argues that the circumstantial evidence was insufficient to sustain his conviction for first degree murder. We disagree.

Conflicts in evidence are to be resolved by the trier of facts, and this includes any conflicts in testimony among witnesses. *State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977). On appeal, we do not consider the weight of the evidence, rather we determine whether there was substantial evidence to support the verdict. *State v. McAfee,* 78 N.M. 108, 428 P.2d 647 (1967). In determining whether substantial evidence supports a criminal conviction, we will view the evidence in the light most favorable to the verdict, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict of conviction. *State v. Parker,* 80 N.M. 551, 458 P.2d 803 (Ct.App.), *cert. denied,* 80 N.M. 607, 458 P.2d 859 (1969). In viewing the evidence presented in this case in the aspect most favorable to the verdict, we determine that there is substantial evidence to support Johnson's conviction of the first degree murder of his wife by deliberately administering anaesthesia to her and then strangling her to death.

## II. *Directed Verdict*

Johnson argues that the trial court should have entered a directed verdict for his acquittal. We disagree. In ruling on a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the State at that particular point in the trial proceedings. *State v. McKay,* 79 N.M. 797, 450 P.2d 435 (Ct.App. 1969). Furthermore, a directed verdict is not proper where there is substantial evidence to support the conviction. *State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979). Therefore, because we have determined that there is substantial evidence to support Johnson's conviction, we hold that the trial court did not err in denying Johnson's motion for a directed verdict.

## III. *Motion to Dismiss for Failure to Produce Evidence*

Johnson claims that the trial court erred in not granting his motion to dismiss following the State's failure to produce the inhaler in question. At trial, Johnson filed a motion for production and independent analysis of a "metaprel inhaler" seized by Detective Romero of the Albuquerque Po-

lice Department, pursuant to a search warrant at the Johnson residence. The motion, in the alternative, requested that if the State could not produce the inhaler, then the indictment be dismissed because "the independent analysis of . . . the Metaprel inhaler may well reveal the presence of ethyl ether within the deceased's home . . . [and] . . . [t]hat the failure of the State to produce the [inhaler] hampered [Johnson] in the preparation of his defense". The motion to dismiss was not granted and the inhaler was not produced. Also, Mr. Rogillio, Sylvia's father, testified that after Detective Romero seized the inhaler, he told Mr. Rogillio that he would have its contents analyzed. Detective Romero, however, testified that he gave the inhaler to Mr. Rogillio. Johnson, therefore, argues that by depriving him the production of the inhaler into evidence, he was denied due process. We disagree.

In *State v. Chouinard,* 96 N.M. 658, 661, 634 P.2d 680, 683 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982), we adopted a three-part test to determine whether the deprivation of evidence constituted reversible error:

"1) The State either breached some duty or intentionally deprived the defendant of evidence;

2) The improperly 'suppressed' evidence must have been material; and

3) The suppression of this evidence prejudiced the defendant. (Citations omitted.)"

We stated that "[t]he purpose of the three-part test is to assure that the trial court will come to a determination that will serve the ends of justice." *Id.*

The record clearly indicates no evidence that Johnson was intentionally deprived of the inhaler. The record further indicates that the inhaler was lost or disposed of after an apparent determination that it had no evidentiary value. The State cannot be said to have breached any duty to Johnson by releasing the inhaler or disposing of it after a reasonable determination that it had no evidentiary value. *See State v. Stephens,* 93 N.M. 368, 600 P.2d 820 (1979).

Nevertheless, even if the State did breach a duty to Johnson by not producing the inhaler, the inhaler was not "material" evidence. In *United States v. Agurs,* 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976), the United States Supreme Court held that:

The proper *standard of materiality* must reflect our overriding concern with the justice of the finding of guilt. (Footnote omitted.) Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. *This means that the omission must be evaluated in the context of the entire record.* (Footnote omitted.) *If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.* [Emphasis added.]

After considering the inhaler in the context of the entire record, and in light of our review and determination of substantial evidence in points I and II, we hold that Johnson was neither prejudiced nor deprived of a fair trial as guaranteed by the due process clause of the fifth amendment, U.S. Const.amend. VI and XIV, because "there is no reasonable doubt about [Johnson's] guilt whether or not the [inhaler] is considered. . . ." *United States v. Agurs, supra,* at 112–113, 96 S.Ct. at 2401–02. Therefore, we determine that the trial court did not err in denying Johnson's motion to dismiss following the State's failure to produce the inhaler.

## IV. *State of Mind Exception*

At trial, over a hearsay objection, Detective Romero was allowed to testify that in order to determine if the seized inhaler contained ether, he called Mr. Whitlock at New Mexico Chemical Services Company, he read to Mr. Whitlock the ingredients listed on the inhaler's box, and he inquired if any of the listed ingredients was ether. Detective Romero testified that Mr. Whitlock replied that none of the ingredients

was ether. On appeal, Johnson argues that Mr. Whitlock's opinion was inadmissible evidence and hearsay in violation of N.M.R. Evid. 802, N.M.S.A.1978, and that insufficient foundation existed to allow Mr. Whitlock's opinion in violation of N.M.R.Evid. 702, N.M.S.A.1978. We disagree.

The record reveals that the trial court allowed this portion of Detective Romero's testimony in evidence only after instructing the jury that it was not offered to prove that "the contents did or did not contain ether but merely to show that the material was obtained and the inquiry made and the answer given in the course of the investigation to show the state of mind of the detective, Romero."

N.M.R.Evid. 803(3), provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

**(3) Then existing mental, emotional or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will \* \* \*.

The determination of the admissibility of statements made within the Rule 803 exceptions to the hearsay rule rests within the discretion of the trial court. *State v. Maestas,* 92 N.M. 135, 584 P.2d 182 (Ct.App.1978). We recognize that the state of mind exception does not include a statement of memory or belief to prove the fact remembered or believed. *State v. Gallegos,* 92 N.M. 370, 588 P.2d 1045 (Ct.App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978). Nevertheless, we continue to agree with the longstanding rule stated in *State v. Alberts,* 80 N.M. 472, 474–475, 457 P.2d 991, 993–994 (Ct.App.1969), that:

Extrajudicial statements or writings may properly be received into evidence, not for the truth of the assertions therein

contained, or the veracity of the out-of-court declarant, but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, motive, effect on the hearer or reader, and many others. However, the evidence must be consistent with a legitimate purpose and have some proper probative effect upon an issue in the case.

Coincident with this general rule is the application of N.M.R.Evid. 105, N.M.S.A.1978 (Cum.Supp.1982), that provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, *the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.* [Emphasis added.]

Considering the issues surrounding Detective Romero's investigation, the determination by Detective Romero that the inhaler had no evidentiary significance, and the trial court's specific limiting instruction to the jury pursuant to Rule 105, we determine that the trial court did not err in admitting the testimony by Detective Romero as to Mr. Whitlock's statements because it explained Detective Romero's state of mind at the time of his actions which included his decision not to take the inhaler into custody as evidence.

V. *Judicial Notice*

Johnson claims that the trial court abused its discretion by taking judicial notice of Section 45–2–102, which provides that in the estate of an intestate decedent with no surviving issue, the entire separate property passes to the surviving spouse. Johnson asserts that this information was highly inflammatory and irrelevant. Johnson also argues that even if there was some relevance to this information, its probative value was greatly outweighed by its unfair prejudice. We disagree.

N.M.R.Evid. 201, N.M.S.A.1978, provides in pertinent part:

(b) A judicially noticed fact must be one not subject to reasonable dispute in

that it is either (1) generally known within the community, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, or (3) notice is provided for by statute.

\* \* \* \* \* \*

(d) A judge or court shall take judicial notice if requested by a party and supplied with the necessary information.

\* \* \* \* \* \*

(g) ... In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

At trial, Sylvia's father testified that he was appointed the personal representative of her estate, and that no will executed by Sylvia was ever found. Johnson did not object to this testimony. The State then specifically requested that the trial court take judicial notice of Section 45–2–102 and offered a copy of the statute. Johnson then objected on the ground that taking such notice was not relevant absent a showing that Johnson knew about the intestate succession law. The trial court, however, overruled the objection and specifically instructed the jury as follows:

At this time the court is going to instruct the jury to take judicial notice of the fact that the probate code of the State of New Mexico provides that as to the separate property of any decedent, that is, the person who died, if there are no children the spouse gets all of the separate property. By telling you this fact that you are to notice the court makes no implication one way or another as to the knowledge of [Johnson] of such fact.

The statute, the State's specific request for judicial notice of the statute, the State's supplying of the copy of the statute, and the trial court's instruction clearly fall within the scope of Rule 201. *Merriam v. Kunzig,* 476 F.2d 1233 (3rd Cir.), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); *Schultz v. Tecumseh Products,* 310 F.2d 426 (6th Cir.1962). Therefore, we hold that the trial court did not abuse its discretion.

## VI. *Expert Testimony*

▮ At trial, over Johnson's objection, Dr. Spitz, a qualified forensic pathologist, was allowed to testify as to the time of Sylvia's death. On appeal, Johnson claims that because Dr. Spitz had not examined the body, there was no basis for Dr. Spitz' testimony, and that this information was prejudicial to him because the time of death was important in "backing up" the State's theory as to the disposition of ether, and the lack of smell of ether in the house. Johnson argues, therefore, that the trial court erred in allowing Dr. Spitz to give his opinion as to the time of Sylvia's death, and that on this basis alone, a new trial should be granted. We disagree.

N.M.R.Evid. 705, N.M.S.A.1978, provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Permitting a hypothetical question to an expert witness and admitting the answer, pursuant to Rule 705, is within the discretion of the trial court. *United States v. Kreimer,* 609 F.2d 126 (5th Cir.1980). If the hypothetical question is asked of the expert during direct examination and allowed by the trial court, then the scope of the question "should include material facts, data and opinions not in dispute and the version of those disputed facts favorable to the proponent of the question which reasonably appear to have a bearing upon the opinion...." M. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 705.2, at 649 (1981).

▮ A review of the record indicates that Dr. Spitz was asked in direct examination if he could form an opinion as to the time of Sylvia's death based upon the facts that Sylvia was found between 7:30 and 8:00 in the morning, dressed in flannel pajamas, in a waterbed that was heated to over

80 degrees, and that when the emergency rescue personnel found her, she was beginning to exhibit signs of rigor mortis. Dr. Spitz answered that he could base an opinion on those facts. He then testified that the time of death would not have been more than two hours prior to when her body was checked by the emergency rescue personnel. A review of this qualified expert opinion testimony clearly indicates that it is well within the scope of Rule 705. Therefore, we hold that the trial court did not err in admitting Dr. Spitz' testimony.

## VII. Rebuttal Testimony

■ At trial, Johnson called Dr. Charles Petty, a forensic pathologist. Even though Dr. Petty did not examine the body of Sylvia either, he was allowed to testify that in his expert opinion Sylvia died of an asthma attack. Thereafter, the trial court ruled, over objection, that Dr. Petty's testimony could be rebutted by the testimony of Dr. Gregory R. Kaufman, also a forensic pathologist, provided Dr. Kaufman did not give his own opinion as to the cause of death. Dr. Kaufman then testified in great detail as to why he believed that Sylvia absolutely did not die of an asthmatic attack. On appeal, Johnson claims that Dr. Kaufman's testimony went far beyond permissible rebuttal testimony. We disagree.

We have held that:

[W]hat shall be permitted to go to the jury as rebuttal testimony is a matter entirely within the discretion of the trial court, and this discretion will not be disturbed except for gross abuse. (Citations omitted.)

State v. Trujillo et al, 30 N.M. 102, 107, 227 P. 759, 761 (1921). A review of the record indicates that the trial court did not abuse its discretion in allowing Dr. Kaufman to rebut Dr. Petty's testimony. Dr. Kaufman specifically limited his testimony as the trial court required. Therefore, we hold that the trial court properly overruled the objection and allowed Dr. Kaufman's rebuttal testimony.

## VIII. Verdict Forms

■ The trial court inadvertently sent two forms for the same verdict that were not alike to the jury at the time they began to deliberate. After reaching a verdict, the foreman advised the trial court that there were two forms for the same verdict and he did not know which one of the two forms to sign. The trial court reviewed the forms and returned the appropriate verdict forms to the jury. After the verdict was reviewed, the judge polled the jury and they affirmed their unanimous support for the form that was signed.

Johnson asserts that by improperly submitting two verdict forms for "guilty" instead of one form to the jury, the trial court created an undue inference that he was guilty and violated his due process rights. We disagree.

A review of the record indicates that the trial court's communication with the jury in this case resolved any possible confusion and was clearly within the trial court's discretion. Cf. State v. Smith, supra. Therefore, we determine that Johnson's due process rights were not violated.

## IX. Tape Recording vs. Typed Transcript

■ Johnson claims that his constitutional rights of due process were violated by using a tape recorder to record the trial and by requiring that the tapes be submitted to the appellate court. No authority is cited by Johnson for this proposition and we reject it.

■ The law in New Mexico has long been settled that the taped recording of a trial court's proceedings properly preserves the record for appellate review with no inherent prejudicial effect. See State ex rel. Moreno v. Floyd, 85 N.M. 699, 516 P.2d 670 (1973); see also State v. Warner, 86 N.M. 219, 521 P.2d 1168 (Ct.App.1974); State v. Lard, 86 N.M. 71, 519 P.2d 307 (Ct.App.1974). Moreover, the taped recording of a trial court's proceedings "adds a most important and significant dimension to the understanding and evaluation of the spoken words." State ex rel. v. Moreno, supra, 85 N.M. at 702, 516 P.2d at 673. Therefore, we determine that Johnson's due

process rights were not violated by the use of cassette tapes to preserve the trial court record.

*Conclusion*

The judgment and sentence of the trial court is affirmed.

IT IS SO ORDERED.

PAYNE, C.J., and SOSA, Senior Justice, concur.