874 P.2d 12

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert C. WILLIAMS, Defendant–
Appellant.**

No. 20394.

Supreme Court of New Mexico.

April 18, 1994.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Joel Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendant, Robert Williams, appeals his convictions for first degree murder and second degree criminal sexual penetration. Defendant raises three issues on appeal: (1) Whether Defendant's tennis shoes were improperly admitted into evidence; (2) whether the admission of Defendant's girlfriend's testimony violated the New Mexico Rule of Evidence forbidding admission of specific pri-or acts to show the accused's propensity to commit a crime. SCRA 1986, 11–404(B) (Rule 404(B)); and (3) whether hearsay testimony by the victim's cousin was improperly admitted under the catch-all exception to the hearsay rule, SCRA 1986, 11–804(B)(6) (Rule 804(B)(6)). Pursuant to SCRA 1986, Section 12–102(A)(2) (Repl.Pamp.1992), we review these issues and affirm.

### I

The following facts viewed in the light most favorable to sustaining Defendant's conviction, with all conflicts resolved and permissible inferences indulged in favor of the verdict, were adduced at trial. *See State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). On the evening of May 8, 1989, Defendant and the victim, Alverda Todacheenie, were seen at the Turnaround Lounge with another gentleman, John Hull. At approximately 10:00 p.m. all three left the bar together in Todacheenie's truck and went to Hull's apartment to drink beer. Sometime after that, Defendant and Todacheenie left and were to meet Hull later at the Skyliner Bar. However, Defendant and Todacheenie did not show up at the bar, and instead drove to an oil well site to engage in consensual sexual intercourse. Once there, Defendant stated his intention to have anal intercourse with Todacheenie. When she refused, he forced her to submit by severely beating her with a board to the point that her scalp was removed from her skull and the bones in her nose were pulverized. While Todacheenie was lying on the ground bleeding profusely, Defendant engaged in anal intercourse with her and then attempted to manually strangle her. Todacheenie was still alive so he got in her truck and ran over her approximately eight times. The cause of death was described as "crushing head, chest and abdomen injuries sustained during the course of being overrun by a motor vehicle." At the scene, areas of blood were discovered on the ground, and a board with blood and hair on it was found in the immediate area. The hair was consistent with Todacheenie's. Tire tracks and Defendant's tennis shoe footprints were also found at the scene.

Detective Lynn Izatt of the San Juan County Sheriff's Department was one of the officers at the murder scene. He noticed the footprints on the sandy ground near Todacheenie's body. They were photographed by the sheriff's department and the FBI.[1] On May 16, 1989, Detective Izatt met and interviewed Defendant at Defendant's apartment. FBI special agent Chuck Moffat was also present at this interview. Detective Izatt and Agent Moffat asked Defendant what clothes he had been wearing on the evening of the 8th, when the homicide occurred. In response, Defendant showed them the shoes he had been wearing. The shoes were white tennis shoes that had recently been washed. Detective Izatt examined the soles of the shoes and thought they matched the footprints found at the crime scene. Detective Izatt did not take possession of the shoes at that time.

At the end of the interview, Detective Izatt asked Defendant if he would be willing to take a polygraph examination, and Defendant agreed to do so. When the Defendant came to the sheriff's office to take the polygraph examination, he was wearing the same white tennis shoes he had shown to Detective Izatt and Agent Moffat at his apartment the previous day. Defendant took the polygraph exam, which he failed.[2] Detective Izatt then confronted Defendant and told him he believed he was lying. At that time, Defendant asked him if they were going to do a test "to see if there was any come in her." Detective Izatt said that a DNA test might be conducted. Defendant then said, "That's fine, because you're not going to find any come in her." Detective Izatt asked, "Why are we not going to find anything in her?", to which Defendant replied, "Because I didn't do anything. I didn't do anything to her." Based on Defendant's polygraph score, his incriminating statements, and the interview conducted by Detective Izatt and Agent Moffat the previous day, Detective Izatt asked again to see Defendant's shoes and then decided to

seize them because the soles appeared to have the same tracks as the footprints found at the crime scene. Defendant was not under arrest when Detective Izatt took the shoes, and Detective Izatt did not have a search warrant.

At trial, Defendant's girlfriend, Carmalita Long, testified pursuant to a plea agreement that on May 9, 1989, the defendant arrived home at 4:00 a.m. and had to be let in because he had lost his key. He had a scratch on his elbow and blood on the knee of his pants. Defendant told her that he had been in a fight. He then washed his pants, shirt, and shoes in the sink and in the morning took them to the laundromat. Long testified that she found sand in the sink and that Defendant started acting strangely: pacing and hardly eating. Long also testified over objection that Defendant enjoyed anal sex.

Additionally, Todacheenie's cousin, and close friend, Sarah Woody, testified over objection that Todacheenie thought anal sex was disgusting, not the place God intended for sex, and that anal intercourse could cause cancer.

Defendant appeals the admission of both his girlfriend's testimony regarding his enjoyment of anal sex and Ms. Woody's testimony regarding the victim's repulsion to anal sex. Defendant also appeals the admission of his tennis shoes into evidence as an unreasonable search and seizure.

## II

First, we address Defendant's argument that the trial court erred in denying his motion to suppress the tennis shoes. Defendant claims that his shoes were seized in violation of his Fourth Amendment rights. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and sei-

---

1. It initially appeared that the well site was situated on Indian land which would have placed the crime investigation under the FBI's jurisdiction.

2. Detective Izatt testified that Williams' polygraph charts were subjected to a detailed numerical analysis. The results were placed on a scale where total scores of plus six or higher indicated truthfulness, minus six or lower indicated deception, and scores of less than six in either direction were inconclusive. Defendant scored minus twenty-seven.

zures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

■ We note initially that this case involves a seizure and not a search.[3] A search occurs when there is an intrusion on a legitimate expectation of privacy. *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). Merely inspecting the parts of an object that come into view lawfully does not constitute a search. *Arizona v. Hicks,* 480 U.S. 321, 325, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987); *see also Texas v. Brown,* 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983) (plurality opinion). Here, Defendant chose to wear the particular tennis shoes to the sheriff's office to take the polygraph. Detective Izatt noticed that Defendant was wearing the tennis shoes he suspected made the tracks found at the crime scene. The tennis shoes came into Detective Izatt's view lawfully and no search occurred. The question is whether the seizure of the tennis shoes which followed violated the Fourth Amendment.

■ In reviewing the trial court's decision on an issue raised by defendant's motion to suppress, "the appellate court may determine if probable cause did or did not exist by an examination of all the record surrounding an arrest or search and seizure." *State v. Martinez,* 94 N.M. 436, 439, 612 P.2d 228, 231, *cert. denied,* 449 U.S. 959, 101 S.Ct. 371, 66 L.Ed.2d 226 (1980). In all cases of warrantless arrest or seizure, the ultimate question is whether the search or seizure was reasonable. *Id.* at 440, 612 P.2d at 232. This Court therefore examines the whole record "so that the full truth may be considered, as to reliability and the existence of probable cause." *Id.*

■ The State argues that the evidence comes within the plain view exception to the Fourth Amendment warrant requirement. "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). The plain view exception to the Fourth Amendment occurs under two types of circumstances. First, and most commonly, the exception permits seizure of evidence discovered in the course of an intrusion for which there was prior justification, such as a search warrant, a hot pursuit, or a search incident to arrest. *State v. Powell,* 99 N.M. 381, 384, 658 P.2d 456, 459 (Ct.App.), *cert. denied,* 99 N.M. 358, 658 P.2d 433 (1983). Second, the plain view exception applies when no search, in the Fourth Amendment sense, has occurred at all. *Id.* It applies in those instances in which an observation is made by an officer without a prior physical intrusion into a constitutionally protected area. *Id.* (quoting 1 W. LaFave, *Search and Seizure* § 2.2, at 242 (1978)); *see also Horton v. California,* 496 U.S. 128, 135, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990) (stating that the plain view doctrine applies where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object); *State v. Calvillo,* 110 N.M. 114, 117, 792 P.2d 1157, 1160 (Ct.App.), *cert. denied,* 110 N.M. 72, 792 P.2d 49 (1990) (holding

---

**3.** We note that the initial request by Detective Izatt to look at Defendant's tennis shoes during the interview at Defendant's home was a search within the meaning of the Fourth Amendment. This search, however, was clearly done with the consent of Defendant so that the subsequent search and seizure of Defendant's tennis shoes did not violate Defendant's Fourth Amendment expectation of privacy. *See State v. Cohen,* 103 N.M. 558, 563, 711 P.2d 3, 8 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). *But see State v. Curry,* 103 Idaho 332, 647 P.2d 788, 794 (Ct.App.1982) (holding no reasonable expectation of privacy with respect to

the physical characteristics of the soles of shoes, and therefore "[e]xamination of the physical characteristics of the soles of the shoes by the officers 'involves none of the probing into an individual's private life and thoughts that marks an interrogation or search.'" (quoting *Davis v. Mississippi,* 394 U.S. 721, 727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969)). Because the search at Defendant's home was consensual, a second inspection of his shoes which the police lawfully viewed does not invade Defendant's reasonable expectations of privacy. *See People v. Richards,* 94 Ill.2d 92, 67 Ill.Dec. 839, 841, 445 N.E.2d 319, 321 (1981).

"When an officer employs his natural senses from a place where he has a right to be, there is no search in the constitutional sense."); *State v. Blackwell,* 76 N.M. 445, 448, 415 P.2d 563, 566 (1966) (stating that merely looking at that which is open to view is not a search within the meaning of the Fourth Amendment). This second type of plain view applies in the present case.

■ In *Coolidge v. New Hampshire,* 403 U.S. 443, 465–470, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971) (plurality opinion), the plurality view was expressed that the plain view doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied. The requirements have been stated as follows:

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

*Texas v. Brown,* 460 U.S. at 737, 103 S.Ct. at 1540–41 (alteration in original) (citations omitted); *see also State v. Crenshaw,* 105 N.M. 329, 333, 732 P.2d 431, 434 (Ct.App. 1986) (applying *Coolidge* criteria for invoking plain view doctrine).

Here, the first requirement of the doctrine—that the initial intrusion be lawful or that the officer properly be in a position from which he can view a particular area—is clearly satisfied. Detective Izatt was at the sheriff's office, a place where he was lawfully allowed to be. Defendant came to the sheriff's office voluntarily and voluntarily wore the tennis shoes. He was neither asked nor required to wear the shoes to the polygraph examination. Detective Izatt noticed that Defendant was wearing the tennis shoes he suspected made the tracks at the crime scene. "[T]here is no reason [why Detective Izatt] should be precluded from observing as an officer what would be entirely visible to

him as a private citizen. There is no legitimate expectation of privacy." *Brown,* 460 U.S. at 740, 103 S.Ct. at 1542.

The second requirement of the *Coolidge* doctrine—that the officer must discover the evidence "inadvertently"—was recently discarded by the Supreme Court in *Horton v. California,* 496 U.S. at 130, 110 S.Ct. at 2304. The Court concluded that "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition." *Id.* The Court explained,

> It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be "immediately apparent." ... Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.... In all events, we are satisfied that the absence of inadvertence was not essential to the Court's rejection of the State's "plain-view" argument in *Coolidge.*

*Id.* at 136–37, 110 S.Ct. at 2308 (citations omitted). Although there may be some question as to whether Detective Izatt "inadvertently" discovered the tennis shoes because he had seen them the previous day, we need not decide this prong of the *Coolidge* test as it is no longer a requirement for the seizure of objects in plain view. *Id.* at 130, 110 S.Ct. at 2304.

The record also supports the court's findings on the third requirement of the *Coolidge* test, that the object's incriminating character be "immediately apparent" to the police. This essentially requires that there be probable cause. In *Brown,* the Supreme Court noted that its opinion in *Colorado v. Bannister,* 449 U.S. 1, 3–4, 101 S.Ct. 42, 43–44, 66 L.Ed.2d 1 (1980), "did not view the 'immediately apparent' language ... as establishing any requirement that a police officer 'know' that certain items are contraband or evidence

of a crime." 460 U.S. at 741, 103 S.Ct. at 1543. Rather, the Court held that " '[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' " *Id.* at 741–42, 103 S.Ct. at 1543 (quoting *Payton,* 445 U.S. at 587, 100 S.Ct. at 1380) (emphasis omitted).

■ "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be ... useful as evidence of a crime." *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543 (citation omitted). Probable cause does not require that an officer's belief be correct or more likely true than false. *Id.* Rather, there need only be a probability that incriminating evidence is involved. *Id.* With these considerations in mind, it is clear that Detective Izatt possessed probable cause to believe that the tennis shoes Defendant wore into the sheriff's office were evidence of Todacheenie's murder. At the hearing on the motion to suppress, Detective Izatt testified that, based on the polygraph test results, the statements Defendant made following the polygraph test, and the fact that Defendant admitted to being with Todacheenie the night of her murder, he asked Defendant for his right shoe, which "appeared to be the same shoe [he] had seen the day before and also, in [his] opinion, appeared to be the same type of track that was at the crime scene on the night of the [murder]." These facts established sufficient probable cause to believe the shoes were evidence of Defendant's participation in Todacheenie's murder, and all of the facts together constitute substantial evidence to support the court's decision that the seizure was reasonable. *See Martinez,* 94 N.M. at 439, 612 P.2d at 231.

### III

■ Next, we address whether Carmalita Long's testimony regarding Defendant's enjoyment of anal sex violates Rule 404(B). Rule 11–404(B) provides that evidence of a person's prior acts is generally not admissible to prove a person's character in order to show that he acted in conformity with that character.

However, such evidence may be admitted for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This list of purposes is not exclusive.

*State v. Landers,* 115 N.M. 514, 517, 853 P.2d 1270, 1273 (Ct.App.) (citation omitted), *cert. quashed,* 115 N.M. 535, 854 P.2d 362 (1993). If evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect. SCRA 1986, 11–403 (Rule 403); *State v. Beachum,* 96 N.M. 566, 567–68, 632 P.2d 1204, 1205–06 (Ct.App.1981). On appeal, the trial court's decision to admit evidence under Rule 404(B) is reviewed for abuse of discretion. *State v. Altgilbers,* 109 N.M. 453, 471, 786 P.2d 680, 698 (Ct.App.1989), *cert. denied,* 109 N.M. 419, 785 P.2d 1038 (1990).

■ The purpose of Rule 404(B) is to exclude the admission of character traits to prove that a defendant acted in accordance with those traits. *State v. Lucero,* 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct.App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992). The basis for excluding character evidence that only shows a propensity to commit various crimes is that such evidence is not probative of the fact that the defendant acted consistently with his past conduct in committing the acts at issue. "Testimony which amounts to evidence of a defendant's bad character or disposition to commit the crime charged is clearly inadmissible." *Id.*

■ Defendant argues that the evidence that he enjoyed anal sex was inadmissible under Rule 404(B). Defendant claims that the evidence was offered to show that because he enjoyed this type of sex, he was more likely to have been the person that forcibly sodomized Todacheenie. Defendant also argues that even if the evidence was admissible, its probative value was outweighed by its prejudicial effect under Rule 403.

Although jurisdictions vary in their treatment of prior sexual behavior, very few cases

deal with the admission of testimony relating to legal sexual activity between consenting adults. Most of the cases discussing prior sexual conduct relate to prior convictions for sex crimes and/or prior uncharged illegal sexual, conduct with the same victim. These cases hold that any evidence of a defendant's sexual desires or practices may be relevant to prove a "licentious" or "lewd" disposition. *See Landers,* 115 N.M. at 517–20, 853 P.2d at 1273–76 (holding evidence of uncharged sexual battery admissible to corroborate victim's testimony); *State v. Beck,* 151 Ariz. 130, 726 P.2d 227, 230–31 (Ct.App.), *rev. denied,* (Ariz. Oct. 7, 1986) (holding prior acts of incest with same daughter admissible); *McKim v. State,* 476 N.E.2d 503, 505 (Ind.1985) (holding girlfriend's testimony that defendant physically abused her and forced her to have sexual intercourse was admissible to show "depraved sexual instinct" in prosecution for incest, rape, and molestation of a teenage daughter); *Brackens v. State,* 480 N.E.2d 536, 539 (Ind.1985) (holding uncharged prior molestation of seven-year old niece admissible to show "depraved sexual instinct"); *State v. DeLong,* 505 A.2d 803, 805–06 (Me. 1986) (citing tradition of admissibility of evidence of prior or subsequent sexual relations between the defendant and the victim, and holding proof of uncharged incidents of incest admissible "to show the relationship between the parties that in turn shed light on defendant's motive, intent, and opportunity"); *State v. Schut,* 71 Wash.2d 400, 429 P.2d 126, 128 (1967) (holding prior acts of incest with victim admissible to show lustful inclination towards victim); *see generally* cases cited in 1 John W. Strong, *McCormick on Evidence* § 190, at 803 (4th ed. 1992) (Practitioner Treatise Series); 1A John H. Wigmore, *Evidence* § 62.2 (Peter Tillers rev. ed. 1983); *Gezzi v. State,* 780 P.2d 972, 974 n. 4 (Wyo. 1989).

■ Here, however, we are faced with the testimony of Defendant's girlfriend regarding legal consensual sexual conduct between consenting adults. We have found three cases in which evidence of prior legal consensual sexual conduct has been admitted into evidence. In *State v. Bruyette,* 158 Vt. 21, 604 A.2d 1270, 1272–74 (1992), the testimony of the defendant's girlfriend was held admissible as being relevant to the issue of identity. However, character evidence is admitted under Rule 404(B) as evidence of identity only when the strict test for relevance is met. This test requires that "[t]he 'pattern and characteristics' of the prior acts must be so distinctive, in effect, to constitute the defendant's signature." *Id.* 604 A.2d at 1273 (holding that evidence of defendant's prior consensual sexual conduct with his girlfriend, which was strikingly similar to conduct perpetrated on victim, was relevant and admissible to show identity). Here, enjoying anal sex clearly is not so distinctive so as to constitute a "signature."

The second case, *State v. Scott,* 11 Conn. App. 102, 525 A.2d 1364, 1368 (1987), *certification denied,* 204 Conn. 811, 528 A.2d 1157 (1987), involved the admission of the defendant's own statement that he had engaged in consensual sex in the same place as where the crime occurred the night before. This case is also inapplicable to the present case because it involved an admission by the defendant rather than testimony given by someone close to the defendant.

■ The third case, *State v. Lucero,* 114 N.M. 489, 840 P.2d 1255 (Ct.App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992), is a New Mexico case in which the Court of Appeals held that the testimony of defendant's girlfriend, that defendant enjoyed oral sex and sometimes she denied him, was irrelevant and hence inadmissible. The testimony in *Lucero* is very similar to that in this case. The witness in each case was involved in consensual sexual relations with the Defendant and both testified to Defendant's sexual preferences. *Lucero* rejected the "lewd" and "lascivious disposition" exception to Rule 11–404(B) in situations in which the state desires to introduce evidence concerning a defendant's prior sexual conduct with someone other than the victim named in the indictment. In such cases, "the 'lewd disposition' exception is nothing more than a euphemism for the character evidence which Federal Rule of Evidence 404(b) and its state counterparts are designed to exclude." *Id.* at 492–93, 840 P.2d at 1258–59. We agree with the Court of Appeals that although "New

Mexico courts have continued to recognize that proof of sexual conduct involving the same victim may be admitted, [we] have not extended this exception to allow proof of other prior sexual conduct unless it meets the criteria for an exception within the concepts recognized under rule 404(B)." *Id.* at 493, 840 P.2d at 1259 (citations omitted). In this case, the evidence is not relevant to the defendant's identity because it is not so distinctive as to constitute a "unique or distinct pattern easily attributable to one person." *Beachum,* 96 N.M. at 568, 632 P.2d at 1206. The evidence is also not relevant to Defendant's motive because merely enjoying anal sex is not sufficient to suggest that Defendant had cause to force himself on Todacheenie. This was clearly character evidence and was not relevant to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Rule 404(B). The evidence was relevant, if at all, only to show Defendant's propensity to engage in anal sex. It should not have been admitted.

 Because we conclude that the evidence is irrelevant and does not fit into any of the exceptions of Rule 404(B), we need not engage in balancing the probative value of the evidence against its prejudicial effect. However, although we hold that the evidence was inadmissible under Rule 404(B), we hold that the error was harmless and reversal is not required. *See State v. Wright,* 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972). For error to be considered harmless, there must be:

(1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

4. The proper rule of evidence under which this testimony could have come in is SCRA 1986, 11–804(B)(6) (Rule 804(B)(6)) because Todacheenie, the declarant, was unavailable. Although the State offered the evidence under Rule 803(X), we will refer to Rule 804(B)(6) in our discussion.

*State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). In this case, there was abundant evidence that Defendant caused Todacheenie personal injury by forcibly engaging in anal intercourse with her. This was sufficient to support his conviction under NMSA 1978, Section 30–9–11(B)(2) (Cum. Supp.1989). He left with Todacheenie on the night of the murder in her truck and his footprints were found at the crime scene. His girlfriend testified that he came home at 4:00 a.m. the day after the murder and that he had a scratch on his elbow and blood on his pants. She also testified that Defendant immediately washed his clothes in the sink and then took them to the laundromat. She testified that after Defendant went to the laundromat, she found sand in the sink. Additionally, Defendant made highly incriminating statements to Detective Izatt about matters of which only someone familiar with the case would know ("... you're not going to find any come in her.... because I didn't do anything"). These facts provide substantial evidence implicating Defendant as the one who raped and murdered Todacheenie. Also, no substantial conflicting evidence was proffered by Defendant to suggest otherwise. The additional evidence improperly put before the jury that Defendant liked anal sex clearly could not have contributed significantly to the conviction and was harmless.

## IV

Finally, we address whether the testimony by Sarah Woody, which consisted of hearsay statements made by Todacheenie, was improperly admitted. Before trial the State asked the court to allow, under SCRA 1986, 11–803(X) (Rule 803(X)),[4] Sarah Woody's testimony that she and Todacheenie had discussed anal sex and that Todacheenie stated she found it disgusting, that it was not the place God intended for sex, and that it could cause cancer. After an offer of proof was made, the court allowed the testimony.

We note that it is irrelevant, in this case, under which exception the testimony was admitted because both 803(X) and 804(B)(6) are worded exactly the same and 803(X) merely permits the evidence whether or not the declarant is available.

The trial court's ruling concerning the trustworthiness of an out-of-court statement will be upheld unless there has been an abuse of discretion. *See State v. Johnson,* 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983). In this case, Ms. Woody's trial testimony established that she and Todacheenie were cousins who grew up next door to each other and that Ms. Woody considered Todacheenie a sister. Woody described the relationship between herself and Todacheenie as being "very close." She testified that she and Todacheenie discussed sexual matters that they did not discuss with anyone else. As for the topic of anal sex, Woody testified that she and Todacheenie discussed it for the first time following a medical procedure Woody underwent in February 1988 relating to colon cancer. Woody testified that Todacheenie stated to Woody that she believed you could get cancer from having "sex the anal way," and that God did not intend humans to have sex anally. After the prosecutor asked Woody if Todacheenie indicated whether she enjoyed sex that way or not, Woody answered that Todacheenie said "that's sick and that's how you can get cancer, too."

Woody testified that the next time the topic of anal sex came up was following a movie she and Todacheenie had seen. The movie had a scene in which the two main characters discuss various sexual positions. While Woody and Todacheenie were driving home from the movie theater, the two talked about anal sex and Todacheenie told Woody she felt it was "inappropriate."

The "catch-all" exception to the hearsay rule can be found in both Rule 803(X) and Rule 804(B)(6). The exception states that hearsay will not be excluded at trial if it is a statement not specifically covered by any of the exceptions in Rule 803 or Rule 804 but has the equivalent circumstantial guarantees of trustworthiness, and if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

SCRA 11–803(X) and 11–804(B)(6). "The 'catch-all exception' to the hearsay rule must be applied stringently in criminal cases because of confrontation concerns." *State v. Pacheco,* 110 N.M. 599, 601–02, 798 P.2d 200, 202–03 (Ct.App.), *cert. denied,* 110 N.M. 533, 797 P.2d 983 (1990). Because hearsay is not subject to the usual safeguard of cross-examination at trial, it must have circumstantial guarantees of trustworthiness equivalent to evidence admitted under the established hearsay exceptions. *Id.* at 602, 798 P.2d at 203.

Here, the statements are admissible under the "catch-all" exception to the hearsay rule because: (1) they are offered as evidence of a material fact—that Todacheenie did not and would not have consented to anal intercourse; (2) the statements were more probative on the point of proving that Todacheenie did not consent to anal intercourse than any other evidence—Todacheenie is dead and could not tell the court whether or not she consented to the anal sex; and (3) the general purposes of these rules and the interests of justice will best be served by admission of Todacheenie's statements into evidence—the circumstances surrounding these statements indicate trustworthiness equivalent to evidence admitted under the established hearsay exceptions.

In *State v. Taylor,* 103 N.M. 189, 704 P.2d 443 (Ct.App.1985), the Court of Appeals identified the four primary dangers of hearsay which can possibly make a hearsay statement unreliable. These dangers must be addressed before a hearsay exception is applicable. They are:

(1) Ambiguity—the danger that the meaning intended by the declarant will be misinterpreted by the witness and hence the jury; (2) Lack of candor—the danger the declarant will consciously lie; (3) Faulty memory—the danger that the declarant simply forgets key material; and (4) Misperception—the danger that the declarant misjudged, misinterpreted, or misunderstood what he saw.

*Id.* at 197, 704 P.2d at 451. In this case, the third and fourth dangers of hearsay testimony pointed out by the *Taylor* court are irrelevant as Todacheenie's statements that she disliked anal sex and thought it could cause cancer could not possibly be due to a faulty memory or a misperception. As for the first and second dangers, ambiguity and lack of candor, there clearly was no danger that Todacheenie's statements would be misinterpreted by Woody and no danger that Todacheenie consciously lied.

Defendant, however, contends that Todacheenie's statement did not have sufficient circumstantial guarantees of trustworthiness to support its admission. Defendant suggests that because Woody and Todacheenie were close friends, Woody had sufficient motivation to lie to protect her friend, making the statement unreliable. We do not agree.

In determining whether a statement is sufficiently trustworthy the statement must be inherently reliable at the time it is made. *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The test under the catch-all rules is whether the out-of-court statement—not the witness's testimony—has circumstantial guarantees of trustworthiness. The credibility of the witness, who is subject to cross-examination, is irrelevant to the trustworthiness analysis. *United States v. Treff*, 924 F.2d 975, 983 (10th Cir.), *cert. denied*, 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991); *Huff v. White Motor Corp.*, 609 F.2d 286, 293 (7th Cir.1979). "In ruling upon the admissibility of the statement the trial court does not determine the ultimate questions of the declarant's credibility; instead, this is the province of the jury." *State v. Sanchez*, 112 N.M. 59, 65, 811 P.2d 92, 98 (Ct.App.1991).

Here, the statements were made in the course of confidential discussions between close friends. Todacheenie had no reason to lie about her feelings concerning anal intercourse, and based on the *Taylor* factors discussed above, none of the dangers exists that would make her statements unreliable. Although Defendant may feel that Woody was not a credible witness, this is a determination for the trier of fact and not this Court.

The specific exceptions to the hearsay rule are not justified by any circumstantial guarantee that the witness who reports the statement will do so accurately and truthfully. That witness can be cross-examined and his credibility thus tested in the same way as that of any other witness. It is the hearsay declarant, not the witness who reports the hearsay, who cannot be cross-examined.

*Huff*, 609 F.2d at 293. The trial court did not abuse its discretion and the evidence was properly admitted. The judgment of the trial court is AFFIRMED.

**IT IS SO ORDERED.**

PATRICIO M. SERNA, District Judge, concurs.

MONTGOMERY, C.J., specially concurs.

MONTGOMERY, Chief Justice, specially concurring.

I concur in the result and in most, but not all, of the rationale in the plurality opinion. The specific focus of this special concurrence relates to the "character" evidence discussed in Part III of the plurality's opinion.

First, I strongly agree that *if* Carmalita Long's testimony that Defendant enjoyed anal sex was character evidence, then its admission was erroneous. For this reason, I also agree with the characterization in *State v. Lucero* (cited in the plurality opinion) of evidence of a "lewd and lascivious disposition" as "nothing more than a euphemism" for character evidence. *See Lucero*, 114 N.M. at 492–93, 840 P.2d at 1258–59.

Indeed, I would go further than does the plurality and specifically disapprove the Court of Appeals' subsequent holding in *State v. Landers* (cited in the plurality opinion) that evidence of a defendant's "lewd and lascivious disposition" is admissible when offered to show the defendant's behavior toward the victim of a sex crime for which the defendant is being prosecuted. As things stand now in New Mexico, evidence of a defendant's lewd and lascivious disposition is admissible if directed toward a victim, *Landers*, 115 N.M. at 519, 853 P.2d at 1275, but not if the disposition is directed toward

someone else, *Lucero*, 114 N.M. at 493, 840 P.2d at 1259. I believe that this distinction is indefensible and that if—again, *if*—the evidence is truly character evidence under Rule 404, it should be excluded in accordance with the rule (unless it is offered for some purpose other than to show that the defendant acted in conformity with his or her character on a particular occasion).[1]

Notwithstanding my agreement with the plurality on its rejection of the so-called "lewd and lascivious disposition" exception to Rule 404's prohibition of character evidence to prove that a person acted in conformity with that character on a particular occasion, I disagree with the plurality over four points. First, I do not think that admission of Ms. Long's testimony about Defendant's enjoyment of anal sex—once again, *if* that testimony constituted character evidence—can properly be treated as harmless error. Using the plurality's definition of harmless error (taken from *State v. Moore*, cited in the opinion), I cannot see that this evidence was so miniscule that it could not have contributed to the conviction. Using another, more recent, definition of harmless error from this Court, I certainly think that there is at least a reasonable possibility that this evidence contributed to Defendant's convictions. *See Clark v. State*, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (error in admission of evidence in criminal trial is prejudicial and not harmless if there is reasonable possibility that evidence might have contributed to conviction). The plurality's own recitation of the facts shows that Ms. Long's testimony might have contributed, and probably did contribute, to Defendant's convictions. The plurality says,

"Defendant stated his intention to have anal intercourse with Todacheenie" and that she refused. How does the plurality know these facts? Answer: by indulging inferences that were undoubtedly drawn by the jury—inferences based on Ms. Long's testimony that Defendant enjoyed anal sex and on the testimony of Sarah Woody (Todacheenie's friend) that Todacheenie didn't.

As Wigmore says, "A defendant's character, ... as indicating the probability of his doing or not doing the act charged, is essentially relevant." IA John H. Wigmore, *Evidence in Trials at Common Law* § 55, at 1157 (Peter Tillers rev. ed. 1983). He elaborates on the same point in the context of character proved by specific "bad acts," saying: "[Such evidence] is objectionable not because it has no appreciable probative value but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to [such evidence]...." *Id.* § 58.2, at 1212. Because Ms. Long's testimony tended to show that Defendant attempted to have anal sex with Ms. Todacheenie and, when she resisted, raped and then killed her, I am unwilling to agree with the plurality's implicit conclusion that there is no reasonable possibility that Long's testimony might have contributed to Defendant's convictions.

The second point on which I disagree with the plurality is a relatively minor one—a quibble, perhaps, but one that I believe has some analytical significance. I disagree that Rule 404(B) has any relevance to this case. Rule 404(B)—sometimes called the "other" or "specific" or "prior" "bad acts" provision of the rule proscribing character evidence—

1. The anomaly of the *Landers* approach to "lewd and lascivious disposition" evidence—which is character evidence—has been recognized, at least implicitly, in a number of cases that adhere to strict application of Rule 404(B) in all cases, including prosecutions for sex crimes. *See Getz v. State*, 538 A.2d 726, 733–34 (Del.1988) (rejecting blanket exception for propensity evidence); *Pendleton v. Commonwealth*, 685 S.W.2d 549, 552 (Ky.1985) (overruling prior caselaw permitting admission of evidence to prove lustful inclination in accused); *State v. Courter*, 793 S.W.2d 386, 389 (Mo.Ct.App.1990) (holding evidence of prior sex crimes only admissible under specific exception categories in Rule 404(B)); *State v. Curry*, 43 Ohio St.2d 66, 330 N.E.2d 720, 723 (1975) (rejecting admission of evidence of uncharged sexual misconduct where sole purpose is to show accused's propensity to commit crime); *Commonwealth v. Shively*, 492 Pa. 411, 424 A.2d 1257, 1259–60 (1981) (overruling prior caselaw allowing different treatment under Rule 404(B) for sexual and non-sexual crimes); *State v. Burchfield*, 664 S.W.2d 284, 287 (Tenn.1984) (declining to expand exceptions to Rule 404(B) to include sex crimes exception). *See also Gezzi v. State*, 780 P.2d 972, 978 (Wyo.1989) (dissenting opinion); David J. Kaloyanides, *The Depraved Sexual Instinct Theory: An Example of the Propensity for Aberrant Application of Federal Rule of Evidence 404(b)*, 25 Loy.L.A.L.Rev. 1297 (1992).

is simply inapplicable to the testimony in this case. Ms. Long did not testify to any prior acts of Defendant, whether "bad," "specific," or "other." She simply testified, presumably based on her personal observations or knowledge, that Defendant enjoyed anal sex. The question this testimony raises is: Was that evidence, in the words of Rule 404(A) (*A*, not B), "[e]vidence of [Defendant's] character or a trait of his character" and therefore "not admissible for the purpose of proving that he acted in conformity therewith" on the occasion in question?

As one treatise on the law of evidence notes, with considerable understatement. "The Evidence Rules do not define 'character.'" 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5233, at 349 (1978). The treatise continues:

> That may seem quite justifiable; doesn't everyone know what the word means in this context? Perhaps. But suppose the prosecution in a criminal case offers evidence that the accused is a "professional gambler" or that the victim of an attempted rape was a "virgin." Is this evidence barred by Rule 404(a) when offered as circumstantial evidence of conduct? Or take a civil case in which it is proposed to prove that the defendant was "clumsy" or "color-blind" or "accident prone" or a "wealthy playboy." Are any or all of these evidence of "character"?

*Id.* at 349–50 (footnotes omitted).

The Wright & Graham treatise does not immediately answer these questions. Similarly, there is a notable dearth of definitions of "character" in other standard works on the law of evidence. One exception—such as it is—is contained in Professor McCormick's treatise (which is also quoted in Judge Weinstein's work): "Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." 1 John W. Strong, *McCormick on Evidence* § 195, at 825 (Practitioner Treatise 1992) (quoted in Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 404[01], at 404–12 (1990)). Obviously, this general definition, while perhaps helpful in suggesting

the kinds of traits that are embraced within the popular—and perhaps the legal—meaning of the term, does not with any specificity establish what the term includes and what it does not.

The Wright & Graham treatise does give some help in identifying characteristics that should not be regarded as "traits of character" within the meaning of Rule 404. It states:

> A person's physical characteristics, e.g., color-blindness, clumsiness, or strength, should not be considered as part of his character for purposes of Rule 404. Such traits are capable of objective proof or disproof and present little danger of prejudice or undue consumption of time. Some physical characteristics such as virginity or syphilitic infection, may imply something of the person's morals but proof of the condition does not depend on a moral judgment. In such cases, admission or exclusion ought to be based directly on Rule 403 rather than attempting to read the elements of that rule into the definition of "character".

Wright & Graham, *supra*, § 5233, at 355 (footnotes omitted). *See also* IA Wigmore, *supra*, § 83 (distinguishing physical capacity, skill, and other similar attributes from character).

> A more difficult question of definition is presented by proof of mental characteristics. Insanity is not usually thought of as a question of "character" and Wigmore argues that other evidence of mental infirmity is admissible to prove conduct. While mental condition must be proved indirectly like character, weakness of mind does not usually have the prejudicial impact of a moral judgment.

Wright & Graham, *supra*, § 5233, at 355 (footnotes omitted) (citing IA Wigmore, *supra*, § 86).

My brief exposure to this problem convinces me that Wigmore is correct in observing that:

> The prohibition against "character evidence" is one of the great enigmas of the law of evidence. The practical implications of the rule are complex and convoluted.

The theoretical underpinnings of the rule are obscure. The historical origins of the rule are poorly understood.

IA Wigmore, *supra*, § 54.1, at 1150.

I am unable to do what all the text-writers and other legal authorities have failed to do. I am unable to outline the contours of the term "character" in Rule 404(A) and to explain why Defendant's penchant for anal sex lies within, or falls without, those contours. Nevertheless, I have concluded that this characteristic—Defendant's enjoyment of anal sex—even if described as a "disposition" or a "propensity," is more like a physical or mental characteristic, testimony concerning which is not precluded by Rule 404, than it is like a generalized trait similar to honesty, temperance, or peacefulness. It is capable of objective proof or disproof, and in fact was proved at the trial below by the testimony of a witness with first-hand knowledge. The witness did not base her testimony on an opinion or on Defendant's reputation—the only kinds of evidence that are ordinarily permitted, under Rule 405, to be used to establish a person's character. I would hold (as my third point of disagreement with the plurality) that Ms. Long's testimony was not evidence of Defendant's character or a trait of his character, forbidden under Rule 404(A) when offered to prove that he acted in conformity therewith, but was instead evidence of a personal characteristic capable of objective proof and therefore not precluded by Rule 404(A).

For these reasons, I disagree with the plurality (as my fourth and final point of disagreement) that the trial court erred in admitting Ms. Long's testimony about Defendant's enjoyment of anal sex. It follows that, for the reasons set out above and those given in the plurality opinion (except Part III), I concur in affirming Defendant's convictions.