704 P.2d 443

STATE of New Mexico, Plaintiff-Appellee,

v.

Oliver Addison TAYLOR, Defendant-Appellant.

No. 8135.

Court of Appeals of New Mexico.

June 13, 1985.

Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, Michael L. Stout, Roswell, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Anthony Tupler, Ass't Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

BIVINS, Judge.

This court granted defendant's application for an interlocutory appeal raising two issues:

1. Was defendant denied his constitutional right to be confronted with the witnesses against him when he was excluded from a competency hearing conducted by a magistrate during preliminary examination, and when his counsel was restricted to submitting written questions; and

2. Was the hearsay statement of the incompetent witness, here a three-year-old, offered through the parents admissible, and if so, did this nevertheless deny defendant his constitutional right of confrontation?

Defendant was charged by information in magistrate court with one count of digital criminal sexual penetration of J.M., a three-year-old boy, contrary to NMSA 1978, Section 30-9-11(A) (Repl.Pamp.1984). The factual basis for the charge alleged that defendant digitally penetrated the child's rectum.

Prior to the preliminary hearing the state filed a "Notice of Intent to Make Use of Statements," indicating an intention to use the hearsay statements of J.M. through his mother and stepfather pursuant to NMSA 1978, Evid.Rule 803(24) (Repl.Pamp.1983). The state contended J.M. was unavailable as a witness because he was incompetent to testify.

At the preliminary examination the magistrate ruled that she should make a determination as to J.M.'s competency. *See State v. Noble*, 90 N.M. 360, 563 P.2d 1153 (1977); *State v. Manlove*, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968). The magistrate ordered defendant from the courtroom while she questioned the child. She also ruled that while defense counsel could remain, he could not directly question J.M., but did allow questions to be submitted for the magistrate to ask. Defendant objected to these procedures. After questioning J.M. in the presence of his parents and counsel,

the magistrate ruled the child incompetent to testify because his communication skills were nil.

The magistrate then proceeded with the preliminary examination, allowing J.M.'s parents to testify over defendant's objection as to statements the child had made concerning the alleged crime and the identity of the claimed perpetrator or perpetrators. Defendant objected. At the conclusion of the examination, the magistrate found probable cause to bind defendant over to district court for trial.

Defendant moved the district court to dismiss the information on the basis that his right of confrontation had been denied when he was excluded during the competency hearing, and his counsel was restricted to submitting written questions, and that the magistrate admitted hearsay testimony in violation of the evidentiary rules and defendant's right of confrontation. The district court denied the motion, but certified these issues for interlocutory appeal. NMSA 1978, § 39–3–3.

We now hold that defendant's confrontation rights were not violated by his exclusion from the competency hearing or by the restrictions imposed on his counsel, but that admission of the hearsay statement was unauthorized by the Rules of Evidence. Consequently, we need not reach defendant's constitutional claim as to the hearsay statement. *State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975).

We first discuss general considerations, and then address the two issues.

**1. General considerations**

■ There are two means of proceeding against a person accused of a capital, felonious or infamous crime: either by presentment or indictment of a grand jury or by information. N.M. Const. art. II, § 14. No person shall be held on information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination. *Id.;* NMSA 1978, Magis.Crim.R. 15 (Repl.Pamp. 1981).

Here the state proceeded by information, thus triggering defendant's right to a preliminary examination. The rules of criminal procedure for magistrate courts require the presence of a defendant "at the arraignment and at every stage of the trial," subject to exceptions not applicable here. NMSA 1978, Magis.Crim.R. 30 (Cum.Supp. 1984).

In addition, art. II, Section 14 of the New Mexico Constitution and the Sixth Amendment to the United States Constitution guarantee to an accused the right "to be confronted with the witnesses against him." The Sixth Amendment is made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Defendant urges his constitutional right to confrontation was violated by the magistrate's rulings excluding him from the competency hearing, claiming that presence of counsel does not act as a waiver of defendant's presence. *State v. McClure*, 94 N.M. 440, 612 P.2d 232 (Ct.App.1980). Further, defendant contends that by not permitting cross-examination of J.M. by his counsel, defendant was also denied his confrontation rights. *Mascarenas v. State*, 80 N.M. 537, 458 P.2d 789 (1969); *State v. Lunn*, 82 N.M. 526, 484 P.2d 368 (Ct.App.1971). In *Mascarenas v. State*, the supreme court held:

> The denial of the right of an accused to fully cross-examine a hostile witness deprives him of the right guaranteed by the constitution "to be confronted with the witnesses against him."

80 N.M. at 539, 458 P.2d 789 (citation omitted).

The denial of cross-examination is raised at the competency hearing level, where defense counsel was restricted to submitting written questions, and at the preliminary examination, where defendant was not allowed to cross-examine J.M. because his out-of-court statement was admitted through his parents. As stated before, because we hold the hearsay statement inadmissible under the Rules of Evidence, we

do not reach the confrontation issue as to the hearsay. We do, however, address the confrontation issue as it relates to the competency hearing.

■ Therefore, if it is determined that defendant was denied his constitutional rights, the effect would be that there has been no hearing, and the district court would be without jurisdiction to proceed. *Mascarenas v. State.*

With those principles in mind, we turn to the specific questions presented.

## 2. The competency hearing.

■ Confrontation rights include defendant's right to be present at every stage of the trial and his counsel's right to participate. *State v. Garcia,* 95 N.M. 246, 620 P.2d 1271 (1980). *See also State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977).

■ Nevertheless, it is recognized that a defendant does not have to be personally present when a fair and just hearing would not be thwarted by his absence, *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), and there may in certain cases be adequate substitutes for defense counsel's interrogation of the witness. *See State v. Martinez,* 99 N.M. 48, 653 P.2d 879 (Ct.App.1982) (confrontation rights not always violated by admission of uncross-examined hearsay). Thus, the questions presented are whether a fair and just hearing on competency was thwarted, and whether defendant was prejudiced by his exclusion and the restriction placed on his counsel.

The state relies on *Moll v. State,* 351 N.W.2d 639 (Minn.App.1984), which we find to be both well reasoned and applicable to the facts in this case. In *Moll* defendant claimed reversible error by the trial court in excluding him and his counsel from a preliminary chambers examination to determine the competency of two child witnesses, ages four and six. The children were determined competent to testify. On appeal the court held that the trial court could properly exclude defendant from the in camera competency hearing, but counsel should be allowed to attend unless the court finds their presence would likely intimidate the child or interfere with the child's ability to communicate. While recognizing under Minnesota law a defendant's right to be present at every stage of the trial, the court in *Moll* held that right exists only to the extent that a fair and just hearing would be thwarted by his absence, citing *Snyder v. Commonwealth of Massachusetts.* Since defendant's presence at the competency hearing would serve no purpose, the *Moll* court concluded that defendant did not have an absolute right to be present.

Defendant argues that *Moll* is distinguishable since it relied on a statute which provides that when an infant is produced as a witness, the court may examine him and determine his capacity. Minn.Stat. § 595.-06 (1982). While New Mexico does not have similar legislation, we note that NMSA 1978, Evid.Rule 104(a) (Repl.Pamp. 1983) permits the judge to determine preliminary questions concerning qualifications of a person to be a witness. Even if Evid.Rule 104(a) can be said not to apply, *see* NMSA 1978, Evid.Rule 1101(d)(1) (Repl. Pamp.1983), the court could still exercise discretion for the same reason Minnesota undoubtedly passed its statute. The magistrate was dealing with a child of tender years, not an ordinary witness. The magistrate wanted the child relaxed, not frightened, and she wanted to conduct the examination in an atmosphere most conducive to communication.

In a similar case involving a criminal sexual abuse of a child, the court in *People v. Breitweiser,* 38 Ill.App.3d 1066, 349 N.E.2d 454 (1976) held exclusion of defendant from an in camera competency hearing did not violate his constitutional rights because the substantial rights of defendant were not involved and defendant's presence would be useless. In describing the nature and purpose of such hearing the court said:

The purpose of such a preliminary hearing is not, as the defendant suggests, to cross-examine the witness so that his "perception and memory could be adequately evaluated". The purpose

is simply to determine whether a witness of tender years is competent to testify. If the judge, in his discretion, feels that the witness possesses the requisite intelligence, respect for truth, and understanding of the oath, then the object of such a preliminary hearing is fulfilled. Once placed on the stand, this witness may be cross-examined, like any other competent witness to determine the weight and credibility of his testimony. It is here, in open court that the defendant has the right to confront the witness and probe into his capacity for memory and perception.

*Id.* at 456. *See also State v. Ritchey,* 107 Ariz. 552, 490 P.2d 558 (1971).

As to defendant's contention that by limiting cross-examination to written questions his right of confrontation was violated, both parties seem to agree that the right to cross-examine may sometimes be subordinated to other competing interests.

█ Under the circumstances of this case, where the child was easily distracted (all he wanted to do was hear the microphone), and where the evidence was that he could become uncommunicative when questioned, and where the court made provision to ask defense counsel's questions, we do not believe that defendant's rights were abridged by not allowing counsel to personally ask the questions.

█ We, therefore, hold that defendant's right of confrontation was not violated by his exclusion from the competency hearing or by the restrictions placed on cross-examination under the facts and circumstances of this case.

█ We do not wish to be understood as condoning the practice of exclusion or limitation of cross-examination in every case. Each must be determined on its own facts. In many situations it would not be appropriate to either exclude the defendant or limit his counsel's ability to effectively cross-examine a witness to determine competency. However, in sex abuse cases, involving children of tender years who would likely be afraid of the setting alone, we are unable to say exclusion of the defendant may not be proper in certain cases. This is particularly so if the defendant is a close relative of the child-victim or if the child, as here, indicates a fear of the defendant. As stated by the court in *Moll:*

> Children of sexual abuse have enough difficulty testifying in open court without the added burden the concurrence [right of defendant to be present] would require. We believe the burden of young sex victims should be made lighter, not more onerous, not only to ensure that sex abusers are fully prosecuted, but to aid in the victims' recovery from this traumatic experience.

351 N.W.2d at 644.

A possible safeguard that would provide the proper environment and at the same time permit the accused to be present would involve the use of close-circuit television where the accused could observe the hearing.

█ Even if it could be said that defendant's exclusion from the competency hearing and the restriction on cross-examination by his counsel violated defendant's right of confrontation, this would not itself require reversal if the error was harmless beyond a reasonable doubt. *State v. Martinez.* Violation of the right to confront witnesses must work some prejudice to the defendant in order for there to be reversible error. *State v. Worley,* 100 N.M. 720, 676 P.2d 247 (1984). The test for harmless constitutional error turns on whether the apparent error did not, beyond a reasonable doubt, prejudice the accused at trial. Before an accused will be able to count his absence at a critical stage reversible error, assuming a competency hearing represents a critical stage, he must demonstrate a possibility of prejudice. *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Fahy v. State of Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975). The mere claim of prejudice does not establish it. *State v. Montoya,* 101 N.M. 424, 684 P.2d 510 (1984).

Defendant does not explain how he was prejudiced by his absence. While claiming that restriction on cross-examination and denying him the right to be present "severely prejudiced" him, defendant does not tell us how. In fact, at oral argument, defendant conceded the ruling of incompetency was correct.

The court allowed counsel to be present, allowed counsel to propose questions to be asked by the court, asked most of the questions submitted, and several times during the proceedings asked counsel if they had anything further. This procedure was approved by concurring opinion of Chief Judge Popovich in *Moll.*

After the child was excused, counsel for defendant restated his objection to defendant's absence and his inability to question the child directly. He also stated that, given more time, he would have had more questions for the child. However, he never said exactly what they were. Nor did he ask the court to ask more questions. Under these circumstances, we hold that any claimed error committed by excluding defendant and restricting cross-examination to written question was harmless beyond a reasonable doubt.

### 3. The hearsay statements.

After determining J.M. incompetent as a witness, the magistrate allowed the child's parents to testify over defendant's objections as to what the child had said concerning the incident and the identity of the perpetrator or perpetrators.

Defendant's wife cared for J.M. while his parents worked. On March 28, 1983, after J.M. had been picked up he complained that his "heiny" hurt. This was either in the afternoon or later that evening after he went to sleep. Early in the morning of the 29th J.M. woke up with nightmares, still complaining about his rectum hurting. The child's anus appeared red, swollen and scratched. His parents thought it was a rash. In the morning of the 29th the child acted strangely and would not allow anyone to touch him; he acted irrationally. At that point the parents did not suspect abuse, but discussed it as a possibility.

This discussion took place in the presence of the child and defendant was mentioned as a possible suspect. They referred to defendant by the name by which the parents and the child knew him, "Oats."

Because the parents did not want to take J.M. back to defendant's home on the 29th, they left him with a friend. They asked the friend to try and find out from J.M. what had happened. Shortly after leaving J.M., the friend called the child's mother and related that the child said that someone had inserted his fingers in his rectum and that it bled.

That evening after bathing, the child began telling what happened. He first said a black man stuck two fingers in his rear end. The child does not know any black people and none have visited the home. Defendant is Caucasian. The child also mentioned a man dressed in a black shirt with a black helmet did it. Then he said Oats did it. When asked what defendant's wife was doing, the child responded that she said, "Oats, stop it. Don't do that." The child also said that older children had done it to him. The conflicting statements were also made by J.M. to a sheriff's investigator and two doctors who examined him.

The parents took J.M. to two doctors, one on the 29th, and another on the 30th. Neither doctor testified but, according to the parents, the doctors were unable to confirm the child's statement of abuse. Although J.M. said he bled, the parents could find no evidence of it.

### (a) Admissibility under Evid.Rule 803(24)—the catch-all exception.

The state, in arguing below for admission of the hearsay statements of J.M., relied on Evid.Rule 803(24). Evidence Rule 803 covers exceptions where the availability of the declarant is immaterial. NMSA 1978, Evid.Rule 804(b) (Repl.Pamp.1983) covers exceptions to the hearsay rule where the declarant is unavailable. The parties seem to agree that because J.M. was declared incompetent, he was unavailable as a witness. Evidence Rules

803(24) and 804(b)(6), known as the residual or catch-all exception, are identical. They provide the following are not to be excluded by the hearsay rule:

> **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Even though the more appropriate rule would seem to be Evid.Rule 804(b)(6), since the two exceptions are identical and the parties rely on Evid.Rule 803(24), we will refer to that rule in our discussion.

The parties agree that the pivotal question as to admissibility under Evid.Rule 803(24) turns on whether the statements of J.M. have the "equivalent circumstantial guarantees of trustworthiness." As the state put it during oral argument, "the bottom line" of this exception to the hearsay rule, as with other exceptions, is "trustworthiness." As we stated in *State v. Self:*

> The danger of admitting hearsay into evidence is that it is not subject to the usual tests that can be applied to ascertain its truthfulness by cross-examination of the declarant. McCormick on Evidence, § 245 (2d ed. 1972). It is not given under oath nor is the declarant subject to cross-examination or to the penalties of perjury. *Chiordi v. Jerni-*

*gan,* 46 N.M. 396, 129 P.2d 640 (1942). However, there are exceptions to the hearsay rule which depend on circumstantial guarantees of reliability to substitute for the oath, cross-examination and penalties of perjury. Guarantees of reliability are and must be the key to open the door to the exceptions.

*Id.* 88 N.M. at 41, 536 P.2d 1093.

In order for any exception to apply, it is necessary to test the proffered hearsay statement against four primary dangers: (1) Ambiguity—the danger that the meaning intended by the declarant will be misinterpreted by the witness and hence the jury; (2) Lack of candor—the danger the declarant will consciously lie; (3) Faulty memory—the danger that the declarant simply forgets key material; and (4) Misperception—the danger that the declarant misjudged, misinterpreted, or misunderstood what he saw. D. Louisell & C. Mueller, *Federal Evidence* § 413 (1980). The individual hearsay exceptions do not alleviate each danger in all cases. J.H. Wigmore, *Evidence* § 1422 (Chadbourn rev. 1974).

With this in mind, we examine J.M.'s hearsay statement, first as to the event, then as to the identification of the perpetrator.

**(1) The event.**

When the child first started talking about the incident, his exact words were that an unnamed man "stuck" fingers up the child's "butt." The child demonstrated with two fingers by pointing to his anal area. Once the child began talking about what made his "heiny" hurt, he never varied from his story about someone sticking fingers up his "butt."

In terms of the four hearsay dangers, it appears that all were satisfied. The statement was clear, unambiguous, and in language and acts to be expected from a three-year-old. *State v. Doe,* 94 N.M. 637, 614 P.2d 1086 (Ct.App.1980). *See also United States v. Nick,* 604 F.2d 1199 (9th Cir.1979). With a child of three, never having been exposed to pornography and not at the age where detailed fantasies

begin, it is unlikely that the child consciously or unconsciously made up the event. *See* Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum.L.Rev. 1745 (1983) (hereinafter "Child Hearsay"). He related the event the day after it happened and the relation was simple enough that it is unlikely that the child forgot what happened. Again, because of the age of the child and his lack of experience, it is unlikely that he misperceived what was happening to him.

The delay in reporting this event is explained in *Child Hearsay,* at 1756. The child may have thought that the event was normal and not worth repeating. Although it hurt him, the child may not have related the hurt to the event. Although the child was questioned by both the babysitter and his parents as to what happened, there is no evidence that anyone suggested to him that his "heiny" hurt because someone "stuck fingers" up his "butt." For the reasons expressed in *Child Hearsay,* there are simply no facts in this case upon which to seriously question the child's relation of the event as anything but trustworthy. Thus, the circumstances surrounding the making of these statements provide guarantees of reliability.

Moreover, the event was corroborated by two types of facts. First, the child's rectum was irritated. Second, the child began acting bizarrely, in a manner to be expected if an event such as the child related actually happened. He had nightmares, was sick, and refused to allow himself to be touched.

Thus, with regard to the event, there are not only guarantees of reliability inherent in the circumstances surrounding the making of the statement, but there are also indicia of reliability in that the event was corroborated by other facts.

**(2) The identity.**

■ A much harder question is presented with regard to the identification of the perpetrator. It will be recalled that the child identified several perpetrators: a black man, a man dressed in various items of black color (black pants, black shirt, black helmet), defendant, defendant and a black man, and older kids. Although defendant was the only person the child specifically named, there was evidence that the parents suggested defendant to the child by discussing in the presence of the child whether defendant could have done this. We do not believe that the child's identification of the perpetrator should be admitted under Rule 803(24), because the statements of identification bear no circumstantial guarantees of trustworthiness and because they are not corroborated.

First, the child named no less than five perpetrators. In terms of the four hearsay dangers, only lack of candor is satisfied. No one would doubt but that the child sincerely believes that what he says is true. However, ambiguity is clearly a danger here. The identification of the perpetrator is patently ambiguous. In addition, the parents are placing their own interpretations on the child's statements when they say that the child went back and forth in his statements but it all comes back to Oats. Both faulty memory and misperception are likewise dangers. How else can one explain the various descriptions of the perpetrator except perhaps that the child forgot who did the act or misperceived who did it, at least part of the time. Given that the child identified five separate perpetrators, it is inherently improbable that his naming of one has any reliability. Thus, there are no circumstantial guarantees of trustworthiness inherent in the circumstances of the making of the statements.

Second, there is no outside corroboration of the identity of defendant as the perpetrator apart from the child's statements. *See Child Hearsay* at 1761. The child was both at school and at defendant's house on the day in question. Thus, a number of people had access to the child. *See State v. Williams,* 598 S.W.2d 830 (Tenn.Cr.App. 1980). *Compare e.g., United States v. Nick* (child found asleep with perpetrator in a locked room); *State v. Apodaca,* 80 N.M. 244, 453 P.2d 764 (Ct.App.1969) (similar). No outside factor even suggests the

possibility of defendant being the perpetrator. *Compare State v. Doe* (vaseline belonged to defendant's grandmother). Absent an outside factor, corroboration by child alone will not suffice; there must exist an adequate indicia of reliability found in the making of the statement. *See State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197 (1984).

Third, in none of the cases cited to us or which we have found, did the child's statement provide the fact finder with a choice as to who was the perpetrator, as does the child's statement in this case. In all of the cases, the child named one perpetrator and never changed his story.

■ For these reasons, we hold that the child's identification of the perpetrator is not cloaked with sufficient circumstantial guarantees of trustworthiness to qualify for admission under Evid.Rule 803(24). We hold it inadmissible. In so doing, we affirm the principle that the catch-all exceptions should be stringently applied in criminal cases. *State v. Barela,* 97 N.M. 723, 643 P.2d 287 (Ct.App.1982).

**(b) Admissibility under Evid.Rule 803(2)—the excited utterance exception.**

In its brief the state argues that even if Evid.Rule 803(24) does not apply, the statements would still be admissible under NMSA 1978, Evid.Rule 803(2) (Repl.Pamp. 1983), the excited utterance exception to the hearsay rule. That rule provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.

Although this ground for admitting the statements was neither raised nor relied on below, the state argues this would not prevent this court finding it applicable because a ruling below may be affirmed if it is right for the wrong reason. *State v. Beachum,* 83 N.M. 526, 494 P.2d 188 (Ct.App.1972). We need not decide whether the right for the wrong reason rule applies here, since

we hold that Rule 803(2) does not provide a basis for admitting the hearsay statements.

The statements do not meet the foundational requirements for excited utterances. In *State v. Martinez,* 102 N.M. 94, 691 P.2d 887 (Ct.App.1984), we said:

Under Rule 803(2), the declaration should be spontaneous, made before there is time for fabrication, and made under stress of the moment. ... However, no particular amount of time lapse will render a statement admissible or inadmissible. ... As long as the statement is produced by the stress of the moment, it is admissible.

*Id.* 691 P.2d at 892 (citations omitted).

In *State v. Apodaca,* statements of a child describing a sexual assault were admitted into evidence under the common law precursor to Evid.Rule 803(2), the *res gestae* exception. The incident happened and the child fell asleep. The statements were made within a few minutes upon awakening, when the child was crying and looking scared. In *State v. Godwin,* 51 N.M. 65, 178 P.2d 584 (1947), statements of a child identifying her assailant were admitted under the same rule where the evidence showed that the statements were made about a half-hour after the incident when the child was confronted with the assailant. Between the incident and the confrontation, the child had been taken to the doctor. The child's condition was that she was torn up physically, her hair was mussed and her clothes partially off, she had blood on her stomach and legs, her labia were bruised and bleeding and her hymen was ruptured.

In both of these cases, there were specific facts and rational inferences supporting the foundational facts necessary to admit evidence under Evid.Rule 803(2). There was not sufficient time for the shock and excitement of the event to dissipate, and the evidence showed that the children were still under the stress caused by the incident.

In addition to *Apodaca* and *Godwin,* the state relies on two out-of-state cases, *State v. Padilla,* 110 Wis.2d 414, 329 N.W.2d 263 (1982); *People in Interest of O.E.P.,* 654

P.2d 312 (Colo.1982). The statements in *Padilla* were given three days after the incident, in *O.E.P.* several days after. Both of these cases extensively discuss two factors not expressly mentioned in the New Mexico cases. First, a broad and liberal interpretation is given as to what constitutes an excited utterance of a child because children usually suffer prolonged stress and do not consciously lie or fabricate these type incidents. Second, interrogation will not defeat the characterization of a statement of a child as an excited utterance because of the tendency of children to repress these incidents.

Notwithstanding these considerations, we believe that they are more pertinent to discussion of Evid.Rule 803(24) than Evid.Rule 803(2). The theory of admissibility of Evid.Rule 803(2) is that "the events themselves speak through the instinctive words and acts of the participants." *Annot.*, 89 A.L.R.3d 102, 110 (1979). In New Mexico, under cases such as *Martinez*, spontaneity and stress are the keys. Because confrontation problems are obviated when the statements fall within a well established hearsay exception such as 803(2), we do not believe it is wise to stretch Evid.Rule 803(2) beyond spontaneous utterances which are the product of the stress-inducing event. If there are special reliability characteristics inherent in the statements of children, they should be analyzed under Evid.Rule 803(24), recognizing them for what they are.

In this case, there is no indication that the child was suffering from the stress of the event. His parents did not even know there was anything wrong until he began complaining late at night on the 28th or early in the morning on the 29th. Even if his statements made then could qualify as excited utterances because he was irrational, aloof, and scared, he did not say anything then except that his "heiny" hurt. He first began talking about the abuse to the new babysitter, under circumstances about which there is no evidence. He then told his parents about it after his bath. He was crying at this time. It is not clear whether the child was responding to questions at the time. He talked to doctors under circumstances about which there is no evidence. Finally, he talked to the detective under circumstances about which there is no evidence and, when the detective attempted to review about the incident because her tape recorder was not working, the child became nervous and upset because he had just talked about it once.

Under these facts, the requisite spontaneity and stress that will allow the statements to be admitted as excited utterances are not present. *See* 89 A.L.R.3d 102; *Alston v. United States*, 462 A.2d 1122 (D.C. App.1983); *State v. Brown*, 341 N.W.2d 10 (Iowa 1983). Evidence Rule 803(2) does not apply.

**4. Conclusion.**

Having so answered the questions certified, we remand to the district court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

ALARID, J., concurs.

DONNELLY, C.J., concurs in result only.