The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 21, 2025

**No. A-1-CA-41444**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**DANIEL MONTOYA,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Senior Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}    Defendant was convicted of the following sex crimes perpetrated against Child when she was five years old: (1) four counts (Counts 1, 2, 3, and 4) of criminal sexual penetration of a minor (CSPM) (under the age of thirteen), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); (2) four counts (Counts 5, 6, 7, and 8) of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(C)(1) (2003); and (3) one count (Count 9) of contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30-6-3 (1990). Child was nearly nine years old when she testified at Defendant's trial. Defendant's primary claim on appeal is that the district court erred in allowing the State to play for the jury the minimally redacted videotape of Child's safehouse interview as a recorded recollection under Rule 11-803(5) NMRA. Alternatively, Defendant claims plain error in the district court's failure to exclude portions of Child's safehouse interview under Rule 11-403 NMRA, as more prejudicial than probative, and under Rule 11-404(B) NMRA, as prejudicial evidence of uncharged conduct. Defendant also challenges the sufficiency of the evidence, during the time period from January 1, 2019 to July 1, 2019, to support his conviction of either CSPM or CSCM for conduct during that time, and claims that his conviction of a third count of CSPM during the time period from July 1, 2019 to January 22, 2020, violates his right to be free of

double jeopardy. Concluding that the evidence did not support Defendant's convictions for conduct prior to July 1, 2019, we vacate Defendant's convictions for Counts 3, 5, and 7. We affirm the convictions on the remaining counts (1, 2, 4, 6, 8, and 9) and remand for resentencing.

**DISCUSSION**

{2}     We address each of the issues raised by Defendant in turn, incorporating the relevant facts as necessary to each argument.

**I.     The District Court Did Not Abuse Its Discretion in Admitting the Safehouse Interview Over Defendant's Foundation Objection**

{3}     Defendant makes two claims of error in the district court's admission of Child's safehouse interview as substantive evidence under the recorded recollection exception to the hearsay rule, Rule 11-803(5). First, Defendant contends that the State failed to lay the requisite foundation for the admission of the safehouse interview as a recorded recollection. Specifically, Defendant contends that the State did not establish that Child could not remember the incidents at issue sufficiently to testify at trial. Defendant argues that a recorded statement cannot be admitted under Rule 11-803(5) without the party seeking to introduce the evidence first establishing the witness's lack of memory by attempting unsuccessfully to refresh the witness's recollection under Rule 11-612 NMRA. According to Defendant, in this case, the State was required to ask Child a question, and if Child responded that she did not remember, the State could show Child the relevant answer in the safehouse interview

video recording, and ask her if her recollection was refreshed. Only if Child testified that her recollection was not refreshed, and she still could not remember, could the State share that limited portion of the video recording with the jury under Rule 11-803(5).

{4}    Second, Defendant contends, in the alternative, that even if the entire safehouse interview was properly played for the jury as a recorded recollection, the district court erred in failing to redact, on the court's own motion, the following: (1) Child's detailed descriptions of Defendant's sexual acts that were accompanied either by hand gestures showing the motions made by Defendant, or by Child demonstrating the position of her legs, as more prejudicial than probative, under Rule 11-403; and (2) Child's statement that Defendant photographed Child nude and engaged in anal penetration, as prejudicial evidence of uncharged crimes, under Rule 11-404(B).

{5}    Because Defendant challenges the admission of evidence at trial, we review the district court's rulings under an abuse of discretion standard and "will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. We will find an abuse of discretion only when the "[district] court's decision was obviously erroneous, arbitrary or unwarranted." *State v. Trujillo*, 2002-NMSC-005, ¶ 15, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted).

**A.    The State Laid a Sufficient Foundation Under Rule 11-803(5) to Allow the Jury to Consider Child's Safehouse Interview as Substantive Evidence Supplementing Child's Trial Testimony**

{6}    Child's safehouse interview is an unsworn out-of-court statement offered for the truth of the matter asserted, and, as such, is hearsay under Rule 11-801(C) NMRA. To be admissible, therefore, the recording of the interview must fall within an exception to the hearsay rule. *See* Rule 11-802 NMRA ("Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court or by statute.").

{7}    Rule 11-803(5), the exception to the hearsay rule that is the focus of the arguments in this case, permits the admission as substantive evidence of an out-of-court statement preserved in a memorandum or recording, so long as the following criteria are met:

    (a) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately,

    (b) was made or adopted by the witness when the matter was fresh in the witness's memory, and

    (c) accurately reflects the witness's knowledge.

*Id.*

{8}    If these criteria are met, the evidence is admitted for its truth, and supplements the witness's oral testimony in court where the witness has some memory, but is unable to recall sufficiently to testify "fully and accurately." 2 Robert P. Mosteller

4

et al., *McCormick on Evidence* § 282 (9th ed. 2025) (stating that proof of a total lack of recall is not required—just that the witness's present recollection is less accurate and detailed than a statement made closer to the time of the event).

{9} The foundation required for the admission of a statement as a recorded recollection is evidence establishing each of the following requirements listed in Rule 11-803(5): (1) the witness once knew about the matter; (2) the witness cannot now recall well enough to testify "fully and accurately"; (3) the recorded statement was made "when the matter was fresh in the witness's memory"; and (4) the recorded statement "accurately reflects the witness's knowledge." *Id.*; *see State v. Macias*, 2009-NMSC-028, ¶ 34, 146 N.M. 378, 210 P.3d 804 (finding a lack of foundation under Rule 11-803(5) where the witnesses did not testify that "[they] had made or adopted the recordings when the matter was fresh in [their] memory or that the information in the recordings correctly reflected [their] knowledge"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

{10} Defendant's primary challenge on appeal is to the first foundational requirement found in Rule 11-803(5)(a): whether the State adequately established that the safehouse interview was on a matter Child once knew about and could no longer remember. Defendant argues that Child's trial testimony showed that she had a present recollection of the charged incidents of sexual abuse, and that her memory of the events had been no better at the time of the safehouse interview. Defendant

points to multiple instances where Child stated on the witness stand that she could not remember an answer to a question asked in court about the date, location, or the number of times the sexual abuse happened—something she also had been unable to remember during the safehouse interview.

{11}   Defendant's focus on the questions Child was simply unable to answer at any time—either during the safehouse interview or on the stand at trial—is misplaced. These are not the questions and answers that the State offered to provide the foundation for the playing of the safehouse interview as a recorded recollection. These memory lapses highlighted for the jury the gaps in Child's testimony, and alerted the jurors to the need to listen for circumstantial evidence that might provide the missing answers as they watched the safehouse video. We note that a young child's inability to testify to dates, times and places when the child victim has been subjected to repeated molestation over a long period of time has been recognized by our Supreme Court in *State v. Lente*, 2019-NMSC-020, ¶ 55, 453 P.3d 416, as a problem of proof common to such prosecutions. The Court discussed in *Lente* the fact that "child victims in resident child molester cases, typically testify to repeated acts of molestation occurring over a substantial period of time but are generally unable to furnish specific details, dates or distinguishing characteristics as to individual acts or assaults." *Id.* (alteration, internal quotation marks, and citation omitted).

{12} Rather than relying on the questions Defendant focuses on in his brief, the State met the foundational requirements of Rule 11-803(5) by questioning Child directly about her recollection. The State first established that Child had watched the video recording of the safehouse interview in preparation for the trial and had initialed the disc to attest to her having viewed the recording. She testified at trial that she remembered the safehouse interview, and that she told the interviewer the truth about what happened to her. The State asked Child whether her memory was better on the day of the safehouse interview or the day of trial. Child testified that her memory was better, and that she remembered the details better at the time of the safehouse interview.

{13} The truth of Child's statement that she no longer remembered the details of the incidents she testified to in the safehouse interview, an interview conducted when some of the incidents of sexual molestation had occurred as recently as a few weeks earlier, was confirmed by her answers to the State's questions about what had happened to her. The prosecutor resorted to a series of short, and potentially leading, questions to obtain any information from Child about what had happened. When asked specifically about acts of sexual penetration, Child testified that she could not remember where the acts occurred, even though she had been able during the safehouse interview to describe several rooms in Defendant's house and in Child's house where such incidents occurred. A comparison of Child's answers in her

testimony in court to the detailed descriptions with distinguishing locations and characteristics for each incident that appear in the safehouse interview shows a distinct deterioration in Child's memory of the details of the relevant events. Child spoke directly in the safehouse interview about details she did not mention or stated she did not remember during her testimony in court.

{14} It was also reasonable for the district court to consider Childs's young age when the abuse occurred in assessing the evidence of an impaired memory. Child was only five years old at the time of the safehouse interview and more than three years had passed between that interview and Defendant's trial. At trial, Child was just two weeks shy of her ninth birthday. Even an adult might have had difficulty testifying "fully and accurately," Rule 11-803(5)(a), about traumatic events occurring repeatedly over a substantial period of time after such a long delay.

{15} We find no abuse of discretion in the district court's finding based on the evidence in the record that Child could not testify fully and accurately at trial to events she remembered and testified accurately about in the safehouse interview. *See State v. Taylor*, 1985-NMCA-063, ¶ 54, 103 N.M. 189, 704 P.2d 443 (explaining that the district court determines the sufficiency of the foundation for the admission of evidence, and we review for "specific facts and rational inferences supporting the foundational facts necessary to admit evidence").

8

{16} We also reject Defendant's argument, raised for the first time on appeal, that the State was required to first attempt to refresh Child's memory under Rule 11-612 before it could show any part of the recorded safehouse interview to the jury as a recorded recollection under Rule 11-803(5). Although the Rule 11-612 argument made on appeal was not specifically preserved, we opt to address it to clarify the foundation required for the introduction of a witness's prior statements as a recorded recollection.

{17} Defendant argues that *State v. Padilla*, 1994-NMCA-067, 118 N.M. 189, 879 P.2d 1208, supports the proposition that the introduction of a statement into evidence as a recorded recollection requires the proponent of the statement to first attempt unsuccessfully to refresh the witness's recollection following the procedure for refreshing recollection generally followed under Rule 11-612. We do not agree that *Padilla* imposes such a requirement.

{18} In *Padilla*, the state unsuccessfully attempted to refresh two witnesses' recollection with their joint written statement to law enforcement the night of the robbery charged against the defendant. The state followed the procedure recognized for refreshing recollection under Rule 11-612: first, asking the witnesses a question about the color of the jacket the robber wore the night of the robbery. When the witnesses each testified that they could not remember, the state allowed them to read the answer provided in their joint statement the night of the crime. When the

witnesses testified they still could not remember, but that they remembered giving the statement that night, that their memory was better, and that they told the truth at that time, the court allowed the answer given in the prior statement to be read to the jury and admitted as substantive evidence as a recorded recollection under Rule 11-803(5). *Padilla*, 1994-NMCA-067, ¶ 34. This Court affirmed the district court's admission of the statement under what is now codified as Rule 11-803(5). *Padilla*, 1994-NMCA-067, ¶ 36.

{19} *Padilla* demonstrates that an attempt to refresh recollection under Rule 11-612, along with some supplemental questions of the witness about when the prior statement was made, whether they were telling the truth, and whether their memory was better at the time, *can* be used to establish the foundation for admission of a statement as a recorded recollection under Rule 11-803(5). *See Padilla*, 1994-NMCA-067, ¶ 34. *Padilla*, however, does not support the proposition argued by Defendant on appeal—that an attempt to refresh recollection *must* be made to establish the foundation for recorded recollection under Rule 11-803(5). Even in *Padilla*, where an attempt to refresh recollection under Rule 11-612 was made, the prior statement was found to be admissible for its truth because the witnesses testified to each of the foundational requirements of Rule 11-803(5): (1) "that they once had knowledge"; (2) "they had accurately conveyed [that knowledge] to [an investigator] at the time of the incident"; (3) they "no longer possessed" that

knowledge; and (4) that the statements were accurately transcribed and attested to. *Padilla*, 1994-NMCA-067, ¶¶ 34-35; *see Macias*, 2009-NMSC-028, ¶ 34 (looking solely to whether the witnesses testified to each foundational element set forth in Rule 11-803(5) to determine whether the admission of evidence as recorded recollection was permissible). Instead of imposing a requirement for a Rule 11-612 attempt to refresh recollection in every case before turning to Rule 11-803(5), *Padilla* requires only that the witness testify to each of the foundational elements in Rule 11-803(5). *See Padilla*, 1994-NMCA-067, ¶ 35 (relying on the witness's testimony that they once had knowledge they no longer possessed, which was accurately provided in a statement at the time of the incident, to allow the statement to be read to the jury as recorded recollection).

{20} For these reasons, we find no abuse of discretion in the district court's decision to grant the State's request to play the safehouse interview for the jury as substantive evidence.

**B. The District Court's Admission of Child's Detailed Description of Defendant's Criminal Sexual Conduct Was Not Plain Error**

{21} Defendant concedes that the remaining evidentiary issues he raises in the alternative to his argument for exclusion of the entire safehouse interview were not preserved in the district court, and that our review, therefore, is for plain error. To reverse a conviction based on plain error, the reviewing court must be convinced that the testimony was admitted in error, and that its admission affected the "substantial

right[s]" of the accused. Rule 11-103(E) NMRA. To find plain error, "the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted).

{22}     Defendant argues first that portions of Child's safehouse interview should have been excluded sua sponte by the district court under Rule 11-403 because they are cumulative of Child's trial testimony and are more prejudicial than probative. Defendant's argument is centered on Child's detailed descriptions in the safehouse interview of each of the sexual acts Defendant engaged in, and focuses, in particular, on Child's illustration of her descriptions with hand and leg movements referring to the positions she was placed in by Defendant and showing the actions taken by Defendant. Specifically, we understand Defendant to argue that this additional detail in Child's safehouse interview was cumulative of her trial testimony, and was prejudicial because it served no purpose other than to bolster Child's trial testimony. We do not agree that the admission of Child's detailed descriptions of the sexual assaults charged against Defendant was error, let alone that these descriptions meet the high standard either to establish unfair prejudice to Defendant or to undermine judicial integrity required for reversal under plain error review.

{23}     Rule 11-403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is unfairly prejudicial "if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). The determination of unfair prejudice is "fact sensitive," and, accordingly, "much leeway is given trial judges who must fairly weigh probative value against probable dangers." *State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted). Importantly, Rule 11-403 does not guard against any prejudice whatsoever, but only against *unfair* prejudice. *Otto*, 2007-NMSC-012, ¶ 16.

**{24}**    We first address Defendant's claim that Child's safehouse interview was cumulative of her trial testimony, and should have been excluded under Rule 11-403 as unnecessary and prejudicial. We noted previously in this opinion that Rule 11-803(5) contemplates the supplementation of a witness's trial testimony with details that the witness no longer remembers. Proof of a total lack of recall is not required— just that the witness's present recollection is impaired such that supplementation with the prior statement will allow the jury to hear full and accurate testimony. *See* 2 Mosteller, *supra*, § 282. In other words, even where a witness is able to testify at

trial about the relevant events, Rule 11-803(5) allows the admission of a prior statement where the witness testified more fully, with a greater level of detail, "concerning a matter about which the victim once knew but now cannot recall well enough to testify *fully and accurately*," so long as the testimony is "not merely cumulative of the victim's testimony at trial." *Commonwealth v. Shelton*, 170 A.3d 549, 552-53 (Pa. Super. Ct. 2017) (alteration, internal quotation marks, and citation omitted).

{25}     In this case, our review of the video recording of Child's safehouse interview shows that, rather than being cumulative of Child's trial testimony as Defendant claims, the safehouse interview supplemented Child's trial testimony by providing additional details and by elaborating on Child's description of the charged incidents of abuse at trial. The safehouse interview supplemented her trial testimony rather than merely repeating it. We, therefore, reject Defendant's claim that the safehouse interview was cumulative of Child's trial testimony.

{26}     Defendant also asks this Court to find that Child's descriptions in the video recording of his conduct were so obviously prejudicial that the district court should have excluded those descriptions, even without objection from Defendant. *See State v. Paiz*, 1999-NMCA-104, ¶ 27, 127 N.M. 776, 987 P.2d 1163 (reversing for plain error where the district court's error was "obvious" to this Court). We decline to apply the plain error exception to excuse Defendant's failure to preserve his

objections. Defendant failed to direct the district court's attention to any particular part of the forty-minute-long video recording and failed, both in the district court and in his briefing to this Court, to provide any argument to support his claim that the evidence presented was more prejudicial to Defendant than it was probative of the issues before the jury. There is a purpose for the requirement that an objection to admission of evidence be brought to the district court's attention and a ruling obtained. "[T]he plain error rule should be applied with caution" and only where the error is obvious and seriously affects the integrity or fairness of the judicial proceedings. *See State v. Marquez*, 1974-NMCA-129, ¶ 19, 87 N.M. 57, 529 P.2d 283.

{27}   In this case, we cannot say that the balance between probative value and prejudice required the exclusion of this evidence under Rule 11-403. Rather, the evidence Defendant claims should be excluded based on plain error was not only relevant, it was necessary to meet the standard set by our Supreme Court in *Lente* for the minimum evidence required to convict a defendant of repeated sexual molestation of a child over a long period of time. *See* 2019-NMSC-020, ¶ 68. Our Supreme Court stated in *Lente* that "the child victim must describe the proscribed act or acts committed with sufficient specificity to establish that unlawful conduct did in fact occur and to permit a jury to differentiate between the various types of sex acts to which the child victim was subjected." *Id.* Where, as was the case here,

15

the credibility of the child is at issue, our Supreme Court recognized that additional details of the various assaults may assist the jury in evaluating the child's credibility. *Id.* ¶ 64.

{28} We are not persuaded that it was an abuse of the district court's discretion to conclude that the evidence Defendant now claims should have been excluded as plain error had strong probative value that was not substantially outweighed by unfair prejudice to Defendant. Finding no error in the admission of the safehouse interview, we affirm the district court's admission of this evidence without addressing the alleged prejudice to Defendant, the second prong of the plain error analysis.

**C.     Defendant Failed to Establish Plain Error Under Rule 11-404(B)**

{29} We turn next to Defendant's claim that the district court's failure to sua sponte exclude Child's safehouse interview testimony about Defendant taking nude photographs of her, and about anal intercourse, was plain error because these were uncharged crimes, and the admission of evidence about them was unfairly prejudicial, in violation of Rule 11-404(B) and Rule 11-403. Defendant asserts this claim in a single paragraph in his brief on appeal. He provides no argument either on the merits of his claim of error under Rule 11-404(B), or on how Child's brief mention of these matters "constituted an injustice that created grave doubts concerning the validity of the verdict," as required to establish plain error. *See*

16

*Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted). "[W]e do not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be." *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. We, therefore do not address this argument.

**II.**    **Defendant's Three Convictions for the Charging Period January 1, 2019 to July 1, 2019, Are Not Supported by Substantial Evidence**

**{30}**    The State used a charging structure that separated Defendant's crimes into two distinct six-month time periods: (1) January 1, 2019 to July 1, 2019; and (2) July 1, 2019 to January 22, 2020. Defendant argues that the State failed to prove that Counts 3, 5, and 7 occurred during the January 1, 2019 to July 1, 2019 time period, charged in each of these counts.

**A.**    **Standard of Review**

**{31}**    Under the sufficiency of the evidence standard of review, we "must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Vest*, 2021-NMSC-020, ¶ 35, 488 P.3d 626 (internal quotation marks and citation omitted). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

17

**B.      The Governing Law for Sufficiency of the Evidence in Child Sex Abuse Cases**

{32}      Our review of this claim is governed by *Lente*, in which our Supreme Court addressed issues that frequently arise regarding the sufficiency of evidence based on the testimony of "child victims in resident child molester cases." 2019-NMSC-020, ¶ 55. To address the fact that it is common that children who are repeatedly sexually molested over a period of time can only provide "generalized accounts of frequent sexual contact with the defendant," *id.* ¶ 1, our Supreme Court clarified in *Lente* that, in relation to the time of the occurrences, a child victim need only "describe the general time period in which the proscribed acts occurred." *Id.* ¶ 70. The Court gave as examples of sufficient specificity, "'[t]he summer before my fourth grade,' or 'during each Sunday morning after he came to live with us.'" *Id.* ¶ 70 (quoting *People v. Jones*, 792 P.2d 643, 655 (Cal. 1990) (in bank). These examples assume that other evidence in the record at trial establishes when the child was in fourth grade or when the defendant came to live with child's family. Our review, then, is not limited to the testimony of the child victim, but incorporates evidence that cumulatively establishes the details needed to satisfy the State's obligation to prove a given time period, as alleged in an indictment.

18

**C.    There is No Evidence in the Record That Would Allow a Reasonable Jury to Attribute Any of Defendant's Proscribed Acts to a Time Before July 1, 2019**

{33}    Our sufficiency of the evidence standard of review requires this Court to "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Vest*, 2021-NMSC-020, ¶ 35 (internal quotation marks and citation omitted). Where, however, there is no evidence in the record that would allow the jury to determine that any of Defendant's charged criminal acts happened prior to July 1, 2019, we are required to reverse the convictions for the January 1, 2019 to July 1, 2019 time period. Our thorough review of the record reveals that reversal is required here.

{34}    Child testified at trial that the acts of sexual abuse happened during the time period Defendant babysat Child. In regard to when the babysitting began, or how much time had passed since it began, Child testified only that Defendant had been babysitting for "a long time." Child testified that she was subjected to cunnilingus several times during the time Defendant babysat for her. She described three specific locations where cunnilingus occurred—in Defendant's bedroom while Defendant babysat at his home, in Defendant's bathroom at his house, and at least once in her brother's bathroom in her house. Child also testifies to incidents of CSPM with Defendant's penis, and several incidents of criminal sexual touching. Despite these

19

descriptions of incidents, and her statement of a "long time," Child provided no information about when Defendant began babysitting for her, or about when the babysitting occurred at the locations she described that would allow these incidents to be placed within a particular time period. Child's testimony alone, therefore, does not provide sufficient evidence to identify the time period during which the incidents occurred or even the length of time the abuse continued.

{35}    We look to the other evidence during trial to determine if the State established when Defendant began babysitting Child, the one marker of the time of occurrence in Child's testimony. If that fact were established by the testimony of another witness, Child's testimony as to that marker in time would be sufficient to establish when Defendant's prohibited acts began.

{36}    Child's mother testified at trial. She described a time period in 2017 during which Child's maternal grandmother lived with the family and helped care for Child. Although Mother testified that grandmother moved out after a year, apparently in 2018, Mother did not testify that she began relying on Defendant for childcare at that time. With regard to the timing of Defendant beginning to babysit, Mother testified that when she was working two jobs "[f]rom late in the year of 2019," she "had a lot of help from [Defendant]." Mother provided details of how she and Defendant coordinated Child's care—that Defendant would pick up Child after school or that Mother would bring Child to Defendant's home, and that Child would sometimes

20

spend Friday nights at Defendant's home, without further clarifying when Defendant's babysitting began. This testimony, therefore, establishes only that Defendant was babysitting Child during the latter portion of 2019, both during the summer and during the 2019-20 school year, and is not sufficient to support the convictions during the six-month period prior to July 1, 2019.

{37}    The State relies in its appellate brief on Mother's testimony that Defendant babysat Child more frequently during the summer than during the school year to establish that some of Defendant's prohibited acts occurred before July 1, 2019. Mother's testimony, however, does not indicate whether she is referring to more than one school year, and to more than one summer, or only to the summer of 2019 and the 2019-20 school year. Nor does Mother provide any evidence as to the date Child's summer schedule began, again making it impossible without speculation to place the start of Defendant's babysitting before July 1, 2019.

{38}    The State also relies on a single sentence where Mother mentions working full time for Ultra Health. We do not agree that this sentence fixes the parameters of the State's January 1, 2019 to July 1, 2019 charging period. Mother continued to work full time at Ultra Health according to her testimony until sometime late in 2019, when she switched to working for Ultra Health on the weekends and another company during the week. Mother's mention of Defendant babysitting while she was working full time for Ultra Health, thus cannot bear the weight the State attempts

21

to place on it. That statement, unaccompanied by any mention of a time period other than during the summer, when Mother was working full time for Ultra Health—a description that fits the summer of 2019—does not provide a sufficient basis to support the State's January 1, 2019 to July 1, 2019 charging period.

{39}     The State also cites to its opening and closing statements at trial to support the January 1, 2019 to July 1, 2019 charging period. In its opening statement, the State represented that it would present evidence that Mother needed assistance with babysitting in the "months and years before January 22nd, 2020." In its closing statement, the State represented that, as of January 22, 2020, the date of the safehouse interview, Defendant's sexual abuse of Child "had been going on for a year, year and a half." Neither opening nor closing statements, however, are evidence.

{40}     Convictions for crimes committed during a particular charging period cannot be upheld by this Court when there is no evidence supporting conduct during that charging period. We, therefore, reverse Defendant's conviction of Counts 3, 5, and 7, the three counts charged during the January 1, 2019 to July 1, 2020 time period.

### III.   Double Jeopardy

{41}     Last, Defendant argues that his conviction of Count 4 (CSPM for licking the anus and/or vagina of Child during the charging period July 1, 2019 to January 22, 2020, is not sufficiently distinct from Count 1 and 2, charging CSPM for Defendant

22

causing victim to engage in cunnilingus during the same charging period. Defendant's argument is not well-taken.

## A.    Standard of Review

{42}    We apply a de novo standard of review to a double jeopardy claim. *See State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects against "multiple punishments for the same offense." *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227 (internal quotation marks and citation omitted). Defendant does not argue that the New Mexico Constitution affords him greater rights than the Fifth Amendment, so we review Defendant's claim only pursuant to the federal right. *See id.* (reviewing double jeopardy claims only pursuant to the Fifth Amendment when the defendant does not argue that the New Mexico Constitution affords greater protections than the United States Constitution).

## B.    The Jury Instructions and Applicable Governing Law on Double Jeopardy

{43}    Counts 1 and 2 are identical CSPM charges for causing Child to engage in cunnilingus twice during the same time period. *See* UJI 14-957 NMRA. The jury instructions defined cunnilingus as "the touching of the edge or inside of the female sex organ with the lips or tongue." Defendant does not challenge his convictions of Counts 1 and 2 on double jeopardy grounds because Defendant concedes that Child's

23

testimony that Defendant licked her "more than once" sufficiently establishes two, but not more, separate, nonunitary violations of the same statute committed at different times. Defendant, however, challenges his additional conviction for CSPM in Count 4, claiming that the Count 4 conviction for "lick[ing] the anus and/or vagina" is for the same conduct charged in Counts 1 and 2, and that therefore the conviction for Count 4 must be vacated.

{44}     Defendant's argument assumes that the evidence supported only two charges for cunnilingus, and that Count 4 is attempting to separately charge "the licking of the . . . anus" during one of the two acts of cunnilingus charged in Counts 1 and 2. Defendant claims that a charge for "licking the anus" violates Defendant's right to be free of double jeopardy because the licking of the anus and vagina occurred together as a unitary act.

{45}     We agree with Defendant that Count 4 must be analyzed as an additional charge of cunnilingus for purposes of evaluating Defendant's claim of double jeopardy. We base our determination, however, on our application of the *Foster* presumption. In *State v. Foster*, our Supreme Court stated that "we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative." 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on*

24

*other grounds as recognized in Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. Under *Foster*, where a jury is instructed that the law states that a crime can be committed in either of two ways, we assume that the jury relied on the way that would create a double jeopardy concern. *Id.* Here, because the jury was instructed that it could convict based either on vaginal licking or on anal licking or on both, we assume that the conviction was based on vaginal licking, making the Count 4 conviction identical to the convictions for cunnilingus charged in Counts 1 and 2.

{46}     We note that our Supreme Court concluded that "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting [a d]efendant of each crime." *Sena*, 2020-NMSC-011, ¶ 54. Thus, the *Foster* presumption can be rebutted by evidence that two crimes, violating the same statute in the same manner, "were separated by both time and intervening events." *Id.* ¶ 56; *see State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 ("The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)). In other words, if there is sufficient evidence of a third distinct incident of cunnilingus in the charging period from July 1, 2019 to January 22, 2020, conviction of Count 4 would not violate the double jeopardy clause.

25

{47} The question then in addressing the double jeopardy issue raised by Defendant involving Counts 1, 2, and 4, is whether the jury reasonably could have inferred that a third, separate act of cunnilingus was committed by Defendant during the relevant time period. Our review of Child's testimony shows that there was substantial evidence from which the jury could reasonably have inferred that a third, separate act of cunnilingus was committed during the relevant time period. Child testified that Defendant licked her vagina in three different locations: (1) in Defendant's bedroom in his house, (2) in Defendant's bathroom in his house, and (3) in her brother's bathroom in Child's house. We conclude that the record shows three distinct acts of vaginal licking by Defendant in different locations at different times during the same charging period. The jury could reasonably have convicted Defendant of Count 4 based on this third instance of cunnilingus that is plainly not unitary with the cunnilingus charged in Counts 1 and 2 and therefore this conviction does not violate Defendant's protection against double jeopardy. We, therefore, affirm Defendant's conviction of Count 4.

**CONCLUSION**

{48} We reverse Defendant's charges as to Counts 3, 5, and 7 for insufficient evidence. We affirm Defendant's convictions of Counts 1, 2, 4, 6, 8, and 9. We remand to the district court to resentence Defendant consistent with this opinion.

26

{49}    **IT IS SO ORDERED.**


_____
                    **JANE B. YOHALEM, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**KATHERINE A. WRAY, Judge**